MATHER CONSTRUCTION COMPANY et al.

v.

The UNITED STATES.

No. 481–69.

United States Court of Claims.

March 16, 1973.

Carl J. Felth, Washington, D. C., attorney of record, for plaintiffs. Daniel J. Andersen, Washington, D. C., of counsel.

Edward J. Friedlander, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner William E. Day (since retired) with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on September 12, 1972. Exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law were filed by plaintiffs and the case has been submitted to the court on oral argument of counsel and the briefs of the parties.

The court has also considered the documents submitted by plaintiffs in their motion for leave to file documents after close of proof but holds that those materials do not have significant bearing on the disposition of the case now in this court and therefore do not require any change in the recommendation of the trial commissioner. The court likewise notes that as of the time of oral argument the plaintiff corporations were still incapacitated to maintain this suit.

Since the court agrees with the trial commissioner's opinion, findings of fact and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same, together with the paragraph set forth above, as the basis for its judgment in this case. Therefore, the plaintiffs are not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

DAY, Commissioner:

This case grows out of a Capehart Act contract between the plaintiffs and the Department of the Air Force for the construction of 220 military housing units at Mather Air Force Base, California. The plaintiffs are seeking to recover $24,405.77 improperly paid from an escrow of the plaintiffs' funds set aside at the closing of the construction project. This payment was made upon the request and authorization of the Department of the Air Force and the Federal Housing Administration.

The case was before the court on the defendant's motion for summary judgment. That motion was denied on October 22, 1971, and the case was returned here for trial. The court further ordered the clerk of the court to issue notice to the Continental Casualty Company and the Fidelity and Casualty Company of New York under Rule 41, those parties apparently having an interest in the disputed claim. Neither company chose to appear at the trial.

At the trial on the merits, the defendant made a motion to dismiss the case based upon lack of jurisdiction. The facts upon which this motion was based were discovered shortly prior to the trial, consequently the issue was not before the court at the time the defendant moved for summary judgment. A ruling on the motion was reserved, and the parties introduced evidence consisting primarily of documentary exhibits. By pretrial agreement, the entire file of Continental Casualty Co., et al. v. American Security Corporation, et al., Civil Action No. 2226–65, in the United States District Court for the District of Columbia and the papers relating to that case as the case was the subject of an appeal to the United States Court of Appeals for the District of Columbia Circuit were admitted into evidence as a court exhibit. [143 U.S.App.D.C. 234, 443 F. 2d 649 (1970), cert. denied, 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed.2d 647 (1971).]

Prior to reaching a resolution of the merits, I will first address this opinion to the defendant's motion to dismiss.

### Motion to Dismiss

The rights and privileges of all three plaintiff corporations have been suspended in California, the State of their incorporation, for failure to pay corporate franchise taxes pursuant to the California Revenue and Tax Code, § 23301 (West 1970). That section of the code provides that:

Except for the purpose of amending the articles of incorporation to set forth a new name, the corporate powers, rights and privileges of a domestic taxpayer shall be suspended, and the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this state shall be forfeited if any of the following conditions occur:

\* \* \* \* \* \*

(b) If any tax, penalty or interest, or any portion thereof, other than jeopardy of fraud assessments, due and payable upon notice and demand from the Franchise Tax Board, is not paid on or before 6 o'clock p.m. on the last day of the 11th month following the due date of said tax.

Plaintiff Mather Construction Company (hereinafter referred to as Mather) was suspended on February 1, 1962; plaintiff J. D. Bradley, Inc. (hereinafter referred to as Bradley) was suspended on August 1, 1966; and plaintiff D & L Construction Company (hereinafter referred to as D & L) was suspended on December 1, 1969. Section 23305 of the code provides for reinstatement of corporations suspended under section 23301 by the payment of all taxes, interests, and penalties due, and upon the issuance of a certificate of revivor by the Franchise Tax Board. None of the plaintiffs have produced a certificate of revivor, and have, in fact, indicated that at the present time they are not in a position to comply with section 23305.

The defendant contends that by virtue of such suspensions and the subsequent failure to secure reinstatement, the three plaintiff corporations lack the capacity to sue in this court.

The capacity of a corporation to sue is governed by Rule 61(b) which provides, in pertinent part, that:

The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.

The court has never had occasion to pass directly on the interpretation to be accorded this part of Rule 61(b), however, the rule was adopted from Rule 17(b) of the Federal Rules of Civil Procedure, and decisions relating to that rule provide adequate guidance.[1]

In Chicago Title & Trust Co. v. Forty-one Thirty-Six Wilcox Bldg. Corp.,

---

1. The provision of the present Rule 61(b) dealing with corporate capacity was adopted as Rule 20(b) by the court in its rules revision of May 15, 1951. It subsequently became Rule 24(b) on March 1, 1964, and Rule 61(b) on September 1, 1969. The pertinent language of the rule is identical to that of Rule 17(b) F.R.C.P., and neither rule has been altered since its original adoption.

302 U.S. 120, 124–125, 58 S.Ct. 125, 127, 82 L.Ed. 147 (1937), the Supreme Court stated that:

> The decisions of this court are all to the effect that a private corporation in this country can exist only under the express law of the state or sovereignty by which it was created * * *. There must be some statutory authority for the prolongation of its life, even for litigation purposes.

The court's decision was rendered in the same year as the promulgation of Rule 17(b), and although not addressed to the rule itself, has been uniformly interpreted as requiring that federal courts apply the law of the state of incorporation when determining corporate capacity under Rule 17(b). McGinnis Theatres & Pay T.V., Inc. v. Video Independent Theatres, Inc., 386 F.2d 592 (10th Cir. 1967), cert. denied, 390 U.S. 1014, 88 S. Ct. 1265, 20 L.Ed.2d 163 (1968); Southern Land, Timber & Pulp Corp. v. United States, 322 F.Supp. 788 (N.D.Ga. 1970); Joseph Muller Corp. v. Societe Anonyme De Gerance, 314 F.Supp. 439 (S.D.N.Y.1970); American Optical Co. v. Philadelphia Electric Co., 228 F.Supp. 293 (E.D.Pa.1964). The capacity of the plaintiffs to sue in this court under Rule 61(b) must therefore be determined by the law of the State of California.

 Under the law of California, a corporation which has been suspended for failure to pay franchise taxes is prohibited from suing, from defending a suit, or from appealing from an adverse decision. Boyle v. Lakeview Creamery Co., 9 Cal.2d 16, 68 P.2d 968–970 (1937); Baker v. Ferrel, 78 Cal.App.2d 528, 177 P.2d 973–974 (Dist.Ct.App. 1947); Graceland v. Peebler, 50 Cal. App.2d 545, 123 P.2d 527–528 (Dist.Ct. App.1942); Ocean Park Bath House & Amusement Co. v. Pacific Auto Park Co., 37 Cal.App.2d 158, 98 P.2d 1068 (Dist.Ct.App.1940). Furthermore, suspension is a defense that may be asserted so long as the corporation is under the disability. Diverco Constructors, Inc. v. Wilstein, 4 Cal.App.3d 6, 85 Cal. Rptr. 851 (Ct.App.1970); Laurel Crest., Inc. v. Vaughn, 272 Cal.App.2d 363, 77 Cal.Rptr. 538 (Ct.App.1969). The purpose of the statute is to exert pressure on delinquent corporations in order to force the payment of overdue taxes. California courts have been liberal in permitting corporations to avoid the effect of suspension by allowing them to secure reinstatement at the time the issue of capacity is raised. A motion for a continuance is normally granted when corporate incapacity is brought to the attention of the court so as to permit the party to cure his disability. See, e. g., Schwartz v. Magyar House, Inc., 168 Cal.App.2d 182, 335 P.2d 487–492 (Dist. Ct.App.1959). The plaintiffs in this case were given 30 days to secure reinstatement at the close of the trial, but have been unable to do so for lack of financial resources.

 Finally, it is observed that plaintiff D & L was suspended for nonpayment of taxes on December 1, 1969, approximately 20 days after its petition was filed. D & L, therefore, had capacity at the time the action was commenced. Capacity, however, is not only the power to bring an action, but is also the power to maintain it. Corporate suspension, rather than precipitating the "death" of the corporation, renders the corporation powerless or "incompetent" to perform certain acts. Just as an individual who is rendered incompetent in the course of a trial may not proceed without substitution (see Rule 66(b)), incapacity of a corporation will render it powerless to proceed and therefore may be raised as a defense at any time prior to final judgment.

 For the foregoing reasons, I find that the three plaintiff corporations lack the capacity to sue in this court, and therefore their action must be dismissed for lack of jurisdiction.

In view of my findings as to the plaintiffs' capacity, it is not necessary to reach a conclusion on the merits of

their case. However, since a trial was ordered by the court in its order of October 22, 1971, I have prepared findings of fact and a recommended conclusion of law pursuant thereto.

### Plaintiffs' Claim

The plaintiffs in this case, seeking to recover $24,405.77, claim that the defendant was unjustly enriched in that amount when it ordered an improper payment from funds escrowed by the plaintiffs at the closing of a military housing construction contract. The defendant admits that the payment was improperly authorized, but argues that the plaintiffs are not entitled to recover it by virtue of a prior decision in the United States District Court for the District of Columbia. The facts are set forth in the findings and will be summarized here.

On September 4, 1958, plaintiffs D & L and Bradley, a joint venture, were awarded Air Force Contract No. AF 04(612)–1032 as the "eligible builder" for the construction of 220 military housing units at Mather Air Force Base, California. D & L and Bradley subcontracted the entire contract, for the full contract price, to Mather Construction Company. The contract was to be financed in accordance with the Capehart Act, 42 U.S.C. §§ 1594–1594f; 12 U.S.C. §§ 1748–1748g (1970)[2] and the builder was required to secure performance and payment bonds in the full amount of the contract price. For the purposes of financing and administration, the contract was divided into three "mortgage areas" or projects which shall be referred to as projects "Air 3", "Air 7", and "Air 8". Together, the three plaintiffs secured separate performance and payment bonds for each project from the Continental Casualty Company and the Fidelity and Casualty Company of New York (hereinafter referred to as sureties). Construction was financed through a mortgage loan from the American Secu-

rity Corporation of Washington, D. C. (hereinafter referred to as American or escrow agent), and payments were to be made to the plaintiffs from disbursements of the mortgage proceeds as authorized by the Federal Housing Administration (hereinafter referred to as FHA) and the Department of the Air Force.

As performance neared completion, the three projects were closed, and moneys were placed in escrow with American by agreement of the parties. At the closing of project Air 7, $23,950.00 was escrowed. This sum was subsequently reduced to a balance of $21,958.00. Two separate escrows were established at the closing of project Air 8, one of $31,532.-40 for estimated uncompleted items of work (subsequently reduced by authorized payments to $28,498.00) and one of $144,007.95. This last escrow represented the final payment of mortgage proceeds for project Air 8 and is the source from which the disputed disbursement was made.

The funds escrowed in this account were admittedly those of the plaintiffs, however, as evidenced by the agreement establishing the account, the funds were:

> \* \* \* subject to payment of any judgments obtained against Mather Construction Co., or any of its subcontractors, or the eligible builder, for or on behalf of parties furnishing labor or materials in connection with the prosecution of the work of this project, or subject to the order of Mather Construction Co. for the payment of such parties upon presentation of a proper release of claims signed or executed by the said parties. It is understood by the parties hereto that the American Security Corporation may request the Federal Housing Administration to approve of such form of release of claims, in writing, prior to disbursement of any proceeds of this escrow.

2. For a discussion of the Capehart system of financing, see Anthony P. Miller, Inc. v. United States, 161 Ct.Cl. 455, 457, cert. denied, 375 U.S. 879, 84 S.Ct. 149, 11 L.Ed.2d 111 (1963).

On May 4, 1960, $42,177.53 was paid to Mather, and on August 16, 1960, $5,107.65 was paid to D & L and Bradley. At that time these sums were represented to be amounts then due certain creditors on the project.

A final payment of $24,405.77 was made on November 22, 1963, to N. P. Van Valkenburgh & Co. reducing the final balance of the third escrow to $72,317.00. Van Valkenburgh was a subcontractor of Mather, and the payment was made pursuant to an award by the Armed Services Board of Contract Appeals for "extra" work done over and above the terms of the original contract. The defendant admits that this payment should not have been made from the escrow of the plaintiffs' funds, but rather should have been reflected by an increase in the total contract price.

The defendant does not dispute the foregoing facts, including the erroneous payment. Its defense is based upon the outcome of litigation instituted by the sureties in the United States District Court for the District of Columbia and subsequently appealed to the United States Court of Appeals, for the District of Columbia Circuit.

The suit in question was commenced by the sureties on September 14, 1965, against the three plaintiffs in this case, the American Security Corporation, the FHA, and the Air Force.

The sureties sought to recover the moneys in the three escrow funds (a total remaining balance of $122,413.00) and the three payments, as mentioned above, that were made out of the last escrow account. The sureties claimed that they had been required to pay out over $400,000 of creditors' claims on the three bonds agreements executed with the plaintiff construction companies, and by virtue of these payments against the bonds, were subrogated to, and also, under the terms of their indemnity and assignment agreements, entitled to whatever interest the contracting companies had in the escrowed funds. Plaintiffs D & L and Bradley counterclaimed for the funds remaining in escrow.

The sureties' claim against the three plaintiffs was made the subject of a motion for summary judgment which was granted by the district court on March 15, 1969. The district court's order reads in part as follows:

1. That such defendants indemnify and reimburse plaintiffs, Continental Casualty Company and The Fidelity and Casualty Company of New York, out of the mortgage proceeds or funds escrowed by them at the final closing of mortgage areas Mather AFB Housing No. Two, Inc. (Capehart FHA Project No. 136–81007, Air 7) and Mather AFB Housing No. Three, Inc. (Capehart FHA Project No. 136–81008, Air 8), pertaining to Housing Contract No. AF–04(612)–1032 dated September 4, 1958, among defendants D & L Construction Company and J. D. Bradley, Inc. (a joint venture), eligible builder; Mather AFB Housing, Inc., Mather AFB Housing No. Two, Inc. and Mather AFB Housing No. Three, Inc., mortgagor builders, and the United States (through the Department of the Air Force) for construction of 220 units of military housing at Mather Air Force Base, California;

2. That, as against defendants Mather Construction Company, D & L Construction Company and J. D. Bradley, Inc., plaintiffs are entitled to the sums so escrowed with defendant American Security Corporation— namely, the amounts of $97,728.44, $28,498.00 and $21,598.00, or a total of $147,824.44, together with any lawful interest which may be payable thereon.

The three plaintiffs sought an appeal to the United States Court of Appeals for the District of Columbia Circuit, and while that appeal was pending, the sureties and the remaining defendants settled their case, paying over to the sureties the escrowed funds less $2,500 in attorney fees to American. In satisfaction, the sureties released the other defendants of all claims arising out of the suit. This settlement was embodied in a

consent order issued by the district court on December 4, 1969.

The plaintiffs were unsuccessful in their appeal, and the court of appeals affirmed the summary judgment order in Continental Casualty Company, et al. v. American Security Corporation, et al., 143 U.S.App.D.C. 234, 443 F.2d 649 (1970), cert. denied, 402 U.S. 907, 91 S. Ct. 1378, 28 L.Ed.2d 647 (1971).

The defendant argues that by virtue of these decisions the entitlement to all funds escrowed was established in the sureties. This includes not only the sums remaining in escrow, but also those paid out prior to judgment. By the consent order of December 4, 1969, the sureties released their claims against the defendant for the improper payment, and the defendant asserts that it cannot now be held to account to the plaintiffs.

The plaintiffs, on the other hand, contend that the rights to the $24,405.77 were not adjudicated in the district court action. They claim that the sureties were seeking the funds then remaining in the escrows, and that the awards of the district court and court of appeals were limited specifically to those funds. The sureties have failed to appear to assert any interest in the improper payment, and therefore it is rightfully the property of the plaintiffs.

A review of the records in the district court and court of appeals reveals that entitlement to the improper escrow payment was made an issue in that case. Although there is some substance to the plaintiffs' claim that the decisions rendered do not specifically vest the right to recover the payment in the sureties, there is also language in those decisions which supports the position of the defendant. Regardless of which party's narrow interpretation of these decisions is correct, however, there can be little doubt, even construing the decisions in the light most favorable to the plaintiffs, that had those courts been presented with the precise question here, they certainly would have ruled in favor of the sureties.

In support of their assertions, the plaintiffs point to the fact that the sureties' original complaint sought "the balance of $72,317.00 remaining in the hands of the escrow agent." It is also true that the complaint was titled "Complaint to Obtain Escrow Funds and Other Declaratory Relief." Nowhere did the complaint request relief concerning the erroneous payment, and no reference to the sum in controversy may be found in the district court order. Further, the court of appeals stated that: " * * * the appellees [sureties] were entitled to the escrow funds held by American Security Corporation * * *." 443 F.2d at 653. Again, no specific reference was made to the Van Valkenburgh payment.

The defendant, in response, directs our attention to the portion of the district court order which holds that the sureties were entitled to " * * * the sums so escrowed with defendant American Security Corporation—namely the amounts of $97,728.44, $28,498.00 and $21,598.00 * * *." The $97,728.44 figure does not represent the balance of the third escrow account (all agree that that was $72,317), but rather represents the outstanding indebtedness to which the plaintiffs admitted being obligated at the time the final escrow account was established. Since the award was over $25,000 more than the final balance of the account, the defendant argues that the order indemnified the sureties to at least that amount more than was remaining in the third account. The sureties were therefore entitled to assert any claims of the plaintiffs up to $25,000.

Briefly reviewing the course of the litigation in the district court, it is not difficult to understand why a precise decision on this issue was not rendered. While the sureties did not specifically claim the erroneous payment in their complaint, their failure to do so may be attributed to the fact that they apparently were not aware of it until approximately one year after the action had commenced. The first reference by any party to the payment was made on Octo-

ber 21, 1966, when the sureties filed a request under Rule 36 for admissions of fact. Once discovered, however, they laid claim to entitlement throughout the proceedings. In answer to the plaintiff construction companies' Interrogatory Number 4 filed February 23, 1967, the sureties stated:

> Plaintiffs state that on or about November 22, 1963, defendant American Security Corporation paid from the special escrow deposit to A. M. Van Valkenburgh & Company[3] the sum of $24,405.77 * * * which plaintiffs consider and state was improperly paid and must be restored by defendants American Security Corporation, Mather AFB No. 3 and the Federal Housing Commissioner.

The record reveals that in the pretrial proceedings, Statement of the Nature of the Case, the plaintiffs (D & L and Bradley) were seeking to have the payment redeposited in the account, and the sureties were claiming entitlement against the escrow agent and the Government.

The theory of the sureties' case was simple; they based their rights to the escrow funds on the indemnity and assignment agreements and claimed that when the plaintiffs defaulted on the bonds there was an assignment of claims that related back and took effect as of the date of the bonds, namely, August 1968. This being the case, a court determination that the sureties were entitled to be subrogated or assigned to the rights of the plaintiffs in the funds would vest the claim in the sureties. The sureties sought to recover, of course, not from the plaintiffs, but rather from the Government and the escrow agent.

When the motion for summary judgment was granted, this was exactly the interpretation placed upon it by the remaining parties. The sureties and the other co-defendants then entered into the settlement and consent order. It is clear from the record that the sureties released their claim for the improper payment in order to effect an immediate recovery of the escrowed funds.

When the consent order was subjected to review in the district court on a motion to vacate, the following statement was made by counsel for the sureties:

> The United States Government here stands a chance, if we are required to try it [the remaining claims] against our will, of losing $47,000 plus twenty-four [the Van Valkenburgh payment] or $71,000, which we say they improperly paid out.

The attorney representing the Government stated at that hearing:

> The second motion is to vacate a consent judgment. To that consent judgment the Government was a party, there was a claim against the Government, the Government in its own best interests settled the claim, and the case has been dismissed * * *.

With this background in mind it becomes clear why entitlement to the erroneous payment was not specifically passed upon. The sureties were pressing this claim against the escrow agent and the Government, not against the plaintiffs, and once their rights were established against the plaintiffs, they then sought settlement of the improper payment. In view of their main claim—subrogation and assignment—the precise determination of entitlement was of minor consequence.

Whether the plaintiffs' or defendant's interpretation of the narrow wording of the decisions is to be accepted makes little difference. The court of appeals accepted the sureties basic argument, stating:

> * * * * * *

> Under the established law of subrogation, appellees would be entitled to claim through appellants whatever rights the appellants had to these escrowed funds [citing Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) ].

---

3. The correct name of the company is N. P. Van Valkenburgh & Company.

Appellants could not assert a right to these funds superior to that of the surety appellees, on the uncontradicted facts here. Furthermore under the indemnity agreement and the assignments executed in regard to each project, the rights of the appellants in each and all of these escrows funds, whether derived from the same or a different project, were assigned to the appellee surety companies to the full amount of any and all sums paid by the sureties in settlement of any claims arising under the bonds, if such claims were paid "in good faith under the belief that they or any of them were liable therefor, whether liable or not."

\* \* \* \* \* \*

Appellees asserted under oath, and it appears highly likely, even if not absolutely certain, from the bare outline of facts we have given in this opinion, that the appellees did pay claims totalling in excess of all amounts escrowed on each of such areas, not only a grand total greatly in excess of the totalled escrowed amounts. 443 F.2d at 652.

■ The Court of Appeals could not "conceive of any theory by which on a trial on the merits appellants could possibly prevail," and I cannot conceive of any theory by which the plaintiffs in this case could possibly have asserted a claim to the erroneous payment superior to that of the sureties. The sureties provided affidavits which reflected that they had paid out over $400,000 of claims against the plaintiffs. Those affidavits were not contradicted by the plaintiffs then, nor are they now, and the total recovery from all three escrows amounted to only $122,413. The sureties were obliged to pay over $250,000 of claims against the plaintiffs for which they will never be reimbursed. The plaintiffs' demand for $24,405.77 pales in insignificance in comparison with the amount in which they were indemnified by their sureties. That a specific reference to the erroneous payment is not found in either decision does not require, as the plaintiffs would wish, that we close our eyes to the clear implication of those decisions. The plaintiffs may not now come into this court and claim relief for which they have no right.

Finally, it is not inappropriate to note that the plaintiffs have stipulated that had the funds not been paid, they would have remained in the escrow account at the time the district court action was commenced. Had that been the case, the plaintiffs undoubtedly would not be here today. Under the circumstances it is evident that the sureties would have collected whatever moneys remained in the escrow up to the sum they paid out under the agreements. I am mindful that, as the defendant points out, the court did in fact award a sum in excess of the three escrows, but for the reasons stated, this opinion need not rest on that fact alone.

As to the plaintiffs' concern that the Government will be receiving a windfall as a result of this decision, I have already noted that the same claim was pressed against the defendant by the sureties, and those parties chose to settle it. As a result of that settlement the sureties have released the defendant, and that is undoubtedly why they did not choose to appear in this action. Such a settlement and release cannot be construed as a windfall to the Government.

It is unnecessary to consider the Government's other defenses to this claim, the plaintiffs not being entitled to recover for the reasons set forth above.