518

COMPUTER PRODUCTS
INTERNATIONAL,
INC., Plaintiff,

v.

UNITED STATES, Defendant.

No. 652–86C.

United States Claims Court.

May 29, 1992.

Merrill G. Emerick, San Mateo, Cal., attorney of record, for plaintiff.

Frank B. Flink, Jr., Robert E. Kirschman, Jr., Dept. of Justice, Civ. Div., Commercial Litigation Branch, with whom were David M. Cohen, and the Asst. Atty. Gen., attorneys of record, for defendant.

## OPINION

HORN, Judge.

This Opinion confirms in writing a decision previously issued orally by the court. On the eve of trial, the defendant filed a Motion to Dismiss, requesting the court to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Rules of the United States Claims Court (RUSCC), for lack of subject matter jurisdiction. Defendant asserts that the plaintiff corporation did not have the capacity to sue in this court because, at the time the lawsuit was filed, the power, rights and privileges of the plaintiff corporation had been suspended under the laws of its state of incorporation, California, for failure to pay taxes, allegedly corporate franchise taxes.

## BACKGROUND

It appears from the record that on or about October 26, 1977, a contract, N00104–78–C–4517, was entered into between Computer Products International, Inc. (CPI), a California corporation,[1] and the United States Navy to supply 494 recording head assemblies for a firm fixed price of $71,136.00. The following contract terms were agreed to by the parties:

Test Specifications: December 27, 1977

Government Approval: January 24, 1977

First Article Testing Sample: May 24, 1978

Approval of First Article: July 24, 1978

Material: December 20, 1978

Complete: June 18, 1978

In the amended complaint, CPI asserts that prior to award of the contract, it had agreed with defendant that the tolerances for the recording heads would be left open due to problems defendant was encountering with heads produced from other suppliers. CPI contends this was done with the specific understanding of the parties that CPI would determine the appropriate acceptance test procedure because tolerances would be assigned by plaintiff at the time

---

1. The contractual documents submitted by the parties, and part of the record before the court, show Computer Products International, Inc., as the name entered into the block designated "CONTRACTOR NAME AND ADDRESS," and that the name of Nasrullah Syed, the president of CPI, is filled in, both in the block titled "CONTRACTOR/OFFEROR" and the block titled "NAME & TITLE OF SIGNER."

of First Article Samples. Section E of the contract states:

> The tolerance in the values of head inductance (L) and "Q" of the spec. on dwg. #220113 has been left open and will be assigned at time of first article testing. This will result in uniformity in the product during production phase.

Unilateral contract modification A00001 apparently was executed on December 2, 1977. It states:

> The contract is amended as follows:

## SECTION E—SUPPLIES AND SERVICES—ADD:

| Item No. | | Amount |
|---|---|---|
| 0001AA | First Article Samples | NSP |
| 0001AB | Contract Data Requirements (See DD Form 1423) | NSP |

Unilateral contract modification A00001 was replaced by unilateral contract modification A00002, dated January 12, 1978, which states:

> The contract is amended as follows:

## SECTION E—SUPPLIES AND SERVICES—ADD:

| Item No. | | Amount |
|---|---|---|
| 0003 | First Article Samples | NSP |
| 0004 | Contract Data Requirements (See DD Form 1423) | NSP |

In the claim filed with the contracting officer, and in the complaint, CPI argues that contract modifications A00001 and A00002 constituted constructive changes to the requirements of the contract because the requirements of First Article Samples and Contract Data Requirements were added. Plaintiff asserts that it should have been awarded an adjustment in the contract price to compensate for such changes. CPI contends that the effect of these changes was to shift the responsibility for determining the acceptance test procedures and for setting the tolerances from CPI to the defendant, in direct conflict with the original intention of the parties. CPI further asserts that due to the changes set forth in modifications A00001 and A00002, defendant regularly rejected drawing packages on the grounds that they did not meet defendant's requirements, as defendant interpreted them under the contract. CPI states that it spent over 3,580 hours attempting to comply with defendant's additional test procedures and first article sample requirements.

Defendant contends that, because the original contract contains detailed descriptions of first article testing and approval requirements, unilateral contract modifications A00001 and A00002 were administrative changes and did not alter the contract requirements. Therefore, defendant asserts that contract modifications A00001 and A00002 could not have increased the costs to perform the contract and that no adjustment to the contract price is necessary.

On July 28, 1978, the contract was amended by bilateral amendment A00003 to change the completion date from July 18, 1979, to December 30, 1978, in exchange for plaintiff's request to extend the time for performance of another contract. Bilateral amendment A00003 states:

> As consideration for an extension of Contract N00104-77-C-3840, the subject contract is modified as follows:

1. Change the contract completion date in Section H:

From: 79 Jun 18 (79169)

To: 78 Dec 30 (78364)

2. There is no change in the contract price as a result of this modification.

In July, 1978, the government furnished equipment for this contract was sent to CPI. CPI asserts that the government's delivery of this equipment was delayed and defective because at least three essential parts were missing. In February, 1979, the Navy requested CPI to send the government furnished equipment to another contractor because CPI was not yet in production and did not need the equipment at the time. CPI asserts that the government agreed to redeliver, in a timely manner, correct government furnished equipment by December 31, 1979, but did not deliver it until the fall of 1980. CPI contends that it performed additional work beyond the scope envisioned in its contract with defendant as a direct result of the alleged defective and delayed delivery of government furnished equipment and that the government's actions constituted a constructive change to the contract.

Effective March 27, 1979, bilateral amendment A00004 was executed by the parties. This amendment changed several portions of the contract schedule and resulted in a reduced contract price of $70,-987.80. In addition, the amendment contains the following language: "This modifi-

cation represents complete and equitable adjustment for all claims of either party up to this point."

On February 15, 1983, the Navy terminated the contract for convenience. Defendant alleges, at that time, CPI had not sent First Article Samples to the Navy for testing and no production of articles had been authorized. Plaintiff asserts that defendant's decision to terminate the contract and refusal to reimburse CPI for costs incurred was due, in part, to the delay and additional costs incurred by CPI as a result of defendant's alleged breach of its duty to cooperate with CPI and to act reasonably in the administration of the contract.

On May 23, 1984, CPI submitted a letter to the government which CPI's president, Mr. Syed, titled a settlement proposal, requesting $179,000.00 for development, fabrication and testing. According to Mr. Syed, the figure is based on an estimate of 3,580 hours of work allegedly performed by CPI pursuant to the contract and charged at the rate of $50.00 per hour.[2]

Defendant asserts, in response, that the statement of hours expended is not based upon any written records of time spent, but is based solely upon the personal recollections of CPI's president, Mr. Syed. Moreover, since CPI is primarily a one-man operation, plaintiff's claim appears to be an attempt to collect for work performed by Mr. Syed.[3] The claim/settlement letter

---

2. In addition, in the complaint, plaintiff also included a separate claim for $71,136.00, representing the contract price, despite the adjustment of the contract price to $70,987.80 in bilateral amendment A00004.

3. Because the pretrial filings had already been received by the court prior to the filing of defendant's Motion to Dismiss, the court had a chance to peruse those filings and to conclude that in all probability even if the defendant's Motion to Dismiss were to fail, the plaintiff had little likelihood of prevailing on the merits of the case at trial. The trial in this case was not bifurcated and the impending trial was scheduled to address the issues of both liability and damages. It appears that even immediately before trial, the plaintiff still was unable to quantify its damages. In the amended complaint, the following statement is made several times: "Plaintiff is unable at this time to quantify its damages and will seek to amend its Petition to

set forth damages when the same have been ascertained." The situation does not appear to have changed. According to the unrefuted statement included in the defendant's filings:

In this case, CPI has clearly failed to submit evidence sufficient to establish with certainty its costs of contract performance up to the date of termination, or its costs of termination. CPI has no records of the value of the parts it claims were turned over to the Government and received by Mr. Rothschild. Similarly, CPI has no invoices for materials utilized to produce any component, parts, or assembly called for by the contract. CPI also has offered no evidence addressing the labor costs it sustained in the performance of the contract. Significantly, CPI acknowledges that the figure it offered for the development cost of a record head were based only upon the estimates of Mr. Syed, the corporate president and sole shareholder of CPI. Thus, the

submitted by Mr. Syed on May 23, 1984, on behalf of CPI, states:

Gentlemen:

In response to your letter of May 10, 1984 we are herewith submitting our settlement proposal for the subject terminated contract.

Although CPI has in its possession all the hardware listed in the attached forms DD 540, DD 541, DD 544, DD 545 and DD 546 and the software (design drawings, performance requirements, procedures, test specs, Q.C. logs), a formal accounting system was not maintained. As a result, we could not readily determine the settlement amount.

The attached statement of work performed towards the development, fabrication and testing of the product is the only "accounting" we can provide that is reasonably accurate and that can be verified.

CPI's claim is for 3580 hours at the rate of $50 per hour. Total amount of claim is for $179,000.

We have worked on this contract for 5 years with no compensation paid by the government so far. Pending a resolution of CPI's claim, CPI requests an advance payment.

For Computer Products
International, Inc.
Nasrullah Syed
President

On August 30, 1985, Mr. Syed submitted another letter to the government on behalf of CPI in the nature of a partial "settlement proposal" and "application for partial payment" requesting the original contract amount of $71,136.00, stating that CPI would file a separate claim with the procurement contracting officer for additional work performed under items 0003 and 0004 in unilateral contract modification A00002. In addition, the letter requests partial payment. Defendant asserts that on September 19, 1985, the Navy paid CPI $20,000.00

in response to CPI's request for partial payment.

On September 26, 1985, CPI, through its attorney, submitted a certified claim to the contracting officer totalling $250,136.00, of which $71,136.00 was for work pursuant to the contract and $179,000.00 was for an additional payment because of an "express and constructive change" due to contract amendment A00002. According to the amended complaint, the Navy denied this claim on October 29, 1985.

Defendant alleges that on February 21, 1986, a Navy Termination Contracting Officer notified CPI that the Navy had improperly advanced the $20,000.00 to CPI as a partial payment because CPI had never delivered a satisfactory First Article Sample, as required by the contract. Although CPI claims that the parts turned over to the government on August 14, 1985 were sufficient to manufacture the entire production quantity, defendant maintains that CPI did not provide parts to the government sufficient to manufacture either the first article or the subsequent production quantity. Furthermore, defendant claims that CPI failed to supply any documentation regarding the value of the parts it turned over to the government, and has offered no evidence to support the amount of labor costs it sustained while allegedly performing under the contract.

*Defendant's Motion to Dismiss*

On the eve of trial, the United States submitted a belated Motion to Dismiss the complaint, pursuant to RUSCC 12(b)(1), for lack of subject matter jurisdiction. Defendant argues that the plaintiff lacks the capacity to bring this suit because on August 1, 1975 the California Franchise Tax Board had suspended CPI's corporate power, rights and privileges, pursuant to California Revenue and Tax Code Section 23301 (Deering 1990) for plaintiff's failure to pay taxes, allegedly corporate franchise taxes. In other words, the suspension took

figure offered by CPI constitutes little more than speculation.

The court must wonder whether a plaintiff who, just days before the trial, has produced little,

solid evidentiary support in favor of its claim is likely to be able to present an adequate case to warrant recovery.

place over two years before October 26, 1977, the date on which the corporate entity, CPI, entered into the contract at issue with the government, and more than ten years before the corporate plaintiff filed the instant complaint in the United States Claims Court.

At the time the government's Motion to Dismiss was filed, all the parties had been aware for some time that the trial in this case had been scheduled. A final, pretrial conference was set for one week before the scheduled trial date. Yet, just one day before the pretrial conference, the defendant filed a Motion to Dismiss based on the alleged lack of capacity of the plaintiff to sue at the time the lawsuit was filed. In its Motion to Dismiss, the defendant maintains that the plaintiff corporation lacks capacity because the charter of the corporation had been suspended by the State of California prior to the time the lawsuit was filed.

The court decided to go ahead with the pretrial conference so that, at the very least, the parties, together with the court, could have an opportunity to discuss the defendant's motion and to decide how to proceed with the case. At the conference, the plaintiff's counsel was asked how he wished to proceed. Indicating that he had a one way, non-refundable airline ticket to Washington, D.C., plaintiff's counsel stated that he had a strong preference for proceeding with the trial on the previously scheduled date. He also indicated, however, that he would like an opportunity to respond to the arguments raised by the defendant regarding the capacity of the plaintiff corporation to sue and the operation of the statute of limitations.

In order to dispose of the defendant's Motion to Dismiss, in advance of the scheduled trial date, the court devised an abbreviated briefing schedule, with which both parties complied. In keeping with the court's promise made to the plaintiff to issue an order on defendant's Motion to Dismiss promptly, the court issued an oral Order granting the defendant's Motion to Dismiss, prior to the time that the plaintiff's counsel would have had to leave his office in order to catch a plane to Washington, D.C. to participate in the trial, if it were to have been held as scheduled. This Opinion merely confirms in writing the court's previously issued Order.

## DISCUSSION

The defendant certainly waited until the very last minute to bring its Motion to Dismiss pursuant to RUSCC 12(b)(1). When a case has been calendared for trial well in advance, as was true in the instant action, the court and the plaintiff are entitled to assume that the defendant has decided to proceed to trial as scheduled. Discovery in the case had been completed and pretrial filings had been filed with the court in preparation for trial at the time the defendant filed its Motion to Dismiss; nonetheless, the court was forced to address defendant's Motion to Dismiss because it raised jurisdictional issues which cannot be ignored by the court and must be disposed of before proceeding to trial.

■ When deciding a motion to dismiss, which is based on a challenge to the jurisdiction of the court, the court must reach its decision based on the evidence presented by the parties. The Supreme Court has clearly articulated, and the United States Court of Appeals for the Federal Circuit has explicitly adopted, the general standard for how courts should weigh evidence presented in a complaint, when deciding a motion to dismiss, as follows:

> Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Sheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989).

■ The Court of Appeals for the Federal Circuit has indicated that if a motion to dismiss for lack of subject matter jurisdiction brings a challenge to the truth of the jurisdictional facts alleged in the complaint, the trial court may also consider relevant

evidence in order to resolve disputed facts. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 747 (Fed.Cir.1988). When the facts alleged in a plaintiff's complaint are challenged, the burden is on the plaintiff to establish jurisdiction. *Burgess v. United States*, 20 Cl.Ct. 701, 703 (1990).

### Law of State of Incorporation Governs a Corporation's Capacity to Sue

Rule 17(b) of the Rules of the United States Claims Court (RUSCC) governs the capacity of a corporation to sue in the Claims Court. This rule is identical in language to Rule 17(b) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.). Rule 17(b) states that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." RUSCC 17(b) and Fed.R.Civ.P. 17(b). In *Mather Construction Company v. United States*, 201 Ct.Cl. 219, 224, 475 F.2d 1152, 1155 (1973), the Court of Claims concluded that California state law applied when assessing the capacity of the plaintiffs, three businesses incorporated in California, to sue in the Court of Claims, and that Rule 17(b) requires that federal courts apply the law of the state of incorporation when determining corporate capacity to sue.

■ More recently, in *BLH, Inc. v. United States*, 2 Cl.Ct. 463 (1983), the Claims Court reaffirmed the long-standing doctrine that a corporation's capacity to sue or be sued in federal court is to be determined by the law of the state of incorporation. *Id.* at 466–67. In *BLH, Inc.*, the court applied Delaware law to determine if the plaintiff, a former Delaware corporation which had been dissolved prior to the initiation of the lawsuit, had the capacity to sue or be sued. The relevant section of Delaware General Corporation Law provided for the continued existence of dissolved corporations for three years to prosecute and defend suits and to settle and close their business. The court granted defendant's motion to dismiss, reasoning that under Delaware law, the plaintiff lacked the capacity to sue, since it had initiated the lawsuit after the passage of three years allowed to wind up business affairs

following corporate dissolution. *Id.* at 467–69.

■ Moreover, the incapacity of a corporation to sue is a defense that may be raised at any time prior to final judgment. *KDH Corporation v. United States*, 23 Cl.Ct. 34, 37 (1991). In *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326 (9th Cir.1978), the Ninth Circuit allowed the appellee to raise the appellant's suspension pursuant to California Revenue and Tax Code Section 23301 as a defense even when the case was on appeal. *See also Mather Construction Company v. United States*, 201 Ct.Cl. at 225, 475 F.2d at 1155.

■ The law of California is applicable to the present case, since plaintiff, CPI, is a corporation which was organized under the laws of the State of California. The California law relevant to the particular facts of this case is California Revenue and Taxation Code Section 23301. Under specified conditions, including nonpayment of taxes, section 23301 provides that: "[e]xcept for the purposes of filing an application for exempt status or amending the articles of incorporation as necessary either to perfect that application or to set forth a new name, the corporate powers, rights and privileges of a domestic taxpayer, may be suspended...." California Revenue and Tax Code § 23301.

■ Under California law, a suspension of corporate status takes away the capacity of a corporation to sue or to defend a legal action. *Community Electric Service, Inc. v. National Electric Contractors Association*, 869 F.2d 1235, 1239 (9th Cir.1989), *cert. denied*, 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989), *overruled by Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1141 (9th Cir.1990) (on a Rule 11 Sanctions issue); *Mather*, 201 Ct.Cl. at 224, 475 F.2d at 1155. Furthermore, in addition to not bringing or defending a lawsuit, a suspended corporation may not appeal from an adverse decision. *Matter of Christian and Porter Aluminum Co.*, 584 F.2d at 331; *Mather*, 201 Ct.Cl. at 224, 475 F.2d at 1155. The policy behind the imposi-

tion of a suspension is to pressure the delinquent corporation to pay the taxes owed. *See Mather,* 201 Ct.Cl. at 225, 475 F.2d at 1155.

In the case at bar, the powers, rights and privileges of the plaintiff corporation, CPI, were suspended on August 1, 1975. More than two years after the suspension, plaintiff entered into the relevant contract with the government. More than ten years after the suspension, on October 16, 1986, plaintiff filed the complaint in this lawsuit. Only at the September 18, 1990 pretrial conference for this case, and after discovery had been completed, did plaintiff's counsel indicate that the plaintiff was applying for a certificate of revivor. On September 19, 1990, plaintiff's counsel faxed to the court a copy of a certificate of revivor for plaintiff CPI, dated September 18, 1990. However, since plaintiff was suspended when it initiated this suit, plaintiff did not have the capacity to bring this case in the first place, nor, as is discussed below, does it presently have the power to maintain this action based on any certificate of revivor obtained at a later date.

### Effect of Certificate of Revivor

An additional issue in this case is whether the statute of limitations included in the Contract Disputes Act, 41 U.S.C. § 609(a)(3) (1988), bars the plaintiff from continuing this action, even though the plaintiff obtained a certificate of revivor reinstating its corporate powers, rights and privileges, albeit years after the original lawsuit was filed.

■ The Contract Disputes Act provides that an action brought by a contractor against the United States "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim...." 41 U.S.C. § 609(a)(3). In *Gunn–Williams v. United States,* 8 Cl.Ct. 531 (1985), the court stated that "[a]fter the issuance of a final decision on the contractor's claim, failure of the contractor to appeal, within the statutory time limits, divests this Court of jurisdiction." *Id.* at 534. Likewise, in *Borough of Alpine,* the

Court of Appeals for the Federal Circuit clearly articulated its position that failure to file within twelve months from the date the contractor received the contracting officer's decision deprives the Claims Court of jurisdiction to entertain the plaintiff's claim. *Borough of Alpine v. United States,* 923 F.2d 170, 173 (Fed.Cir.1991).

The facts of the instant case indicate that the contracting officer's final decision denying CPI's claim on the subject contract was issued on October 29, 1985. In order to file a timely complaint, pursuant to the twelve month statute of limitations set forth in the Contract Disputes Act, CPI would have had to file a valid complaint on or before November, 1986, within one year from October 29, 1985, the date on which the Navy denied CPI's claim.

■ The courts have held consistently that the twelve month statute of limitation for initiating a case included in the Contract Disputes Act, 41 U.S.C. § 609(a)(3), should be strictly construed. The United States Claims Court should not allow exceptions or tolling provisions not authorized by Congress. Consequently, this court should not expand the government's limited waiver of its sovereign immunity authorized by Congress in the Contract Disputes Act. *See Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271, 1 L.Ed.2d 306 (1957); *Shaver Partnership v. United States,* 11 Cl.Ct. 594 (1987); *Gregory Lumber Company v. United States,* 229 Ct.Cl. 762, 763 (1982). As stated in *Structural Finishing, Inc. v. United States,* 14 Cl.Ct. 447 (1988): "A statute of limitations 'is a condition on the waiver of sovereign immunity and thus must be strictly construed.'" *Id.* at 450 (citing *Bowen v. City of New York,* 476 U.S. 467, 479, 106 S.Ct. 2022, 2029, 90 L.Ed.2d 462 (1986)). The United States Supreme Court, in *Soriano,* explained why this court could not hear cases barred by the statute of limitations, stating:

It has been settled since *Kendall v. United States,* 107 U.S. 123 [2 S.Ct. 277, 27 L.Ed. 437] (1883), that the Congress in creating the Court of Claims restricted that court's jurisdiction. In *Kendall* this

Court held that the Congress in the Act creating the Court of Claims gave the Government's consent to be sued therein only in certain classes of claims and that no others might be asserted against it, including "claims which are declared barred if not asserted within the time limited by statute." *Id.* at 125 [2 S.Ct. at 278].

*Soriano v. United States,* 352 U.S. at 273, 77 S.Ct. at 272.

■ California Revenue and Taxation Code Section 23305a (Deering, 1990) provides that a suspended corporation, which pays back-taxes, interest and penalties, may be relieved from suspension and obtain a certificate of revivor. Plaintiff obtained such a certificate from the California Franchise Tax Board only on September 18, 1990, long after the contract at issue was entered into and well after the instant lawsuit was filed. The effect of plaintiff's acquisition of a certificate of revivor on its ability to continue this suit, or, in the alternative, to file a new suit, is limited by California Revenue and Taxation Code Section 23305a. This section states that: "[u]pon the issuance of such certificate by the Franchise Tax Board the taxpayer therein named shall become reinstated but such reinstatement shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture." California Revenue and Taxation Code § 23305a.

■ California case law has consistently held that reinstatement of a corporation's powers, rights and privileges after the expiration of the applicable statute of limitations will not retroactively validate the earlier improper filing of a complaint. *Community Electric Service,* 869 F.2d at 1240–1241; *ABA Recovery Services, Inc. v. Konold,* 198 Cal.App.3d 720, 244 Cal.Rptr. 27, 30 (4th Dist.1988); *Welco Construction, Inc. v. Modulux, Inc.,* 47 Cal.App.3d 69, 120 Cal.Rptr. 572, 573 (1st Dist.1975).

In *Community Electric Service,* the United States Court of Appeals for the Ninth Circuit rejected two arguments made by plaintiff in that action: first, that corporate revival validates retroactively all prior acts undertaken during times of suspension, even after a defense accrues, and second, that the statute of limitations was not a meritorious defense. *Community Electric Service,* 869 F.2d at 1240–41. The Ninth Circuit disposed of the plaintiff's first argument based on California case law which has consistently rejected the theory of retroactive validation of acts undertaken by corporations during suspension. *Id.* at 1240. As for plaintiff's second argument, the Ninth Circuit, following applicable California case law, noted that "statutes of limitation are vital to the welfare of society, favored by the law, viewed as statutes of repose and as such constitute meritorious defenses." *Id.* at 1241 (citing *Welco,* 120 Cal.Rptr. at 30). The Ninth Circuit, therefore, upheld the statute of limitations defense asserted by the defendant in *Community Electric Service,* reasoning that it could not modify California's determination that the expiration of the statute bars a delinquent corporation's claim. *Id.*

In *ABA Recovery Services,* 198 Cal. App.3d at 720, 244 Cal.Rptr. at 27, the Court of Appeal of California, Fourth Appellate District, affirmed the decision of the Superior Court of San Diego County which held that the plaintiff did not have capacity to sue because its corporate powers had been suspended for failure to pay taxes, and the applicable statute of limitations on ABA's claim had run. The Court of Appeal of California relied on *Welco,* to the effect that procedural acts in the prosecution or defense of a lawsuit can be validated retroactively by the corporate revival, but that substantive defenses accruing during a corporate suspension may not be so validated. The court in *ABA Recovery Services* noted that the *Welco* court had held that the statute of limitations is a substantive defense which accrued while the plaintiff corporation was suspended, and, therefore, that the defense could not be prejudiced by revival of the suspended corporation. The *ABA* court concluded that the plaintiff lacked the capacity to maintain the action, stating: "[t]he statute of limitations defense accrued during the period of the corporation's suspension and was unaffected

by its later corporate revival. Accordingly, the court correctly ruled ABA's action was barred by the statute of limitations." *Id.*

The facts in the present case clearly indicate that the statute of limitations included in the Contract Disputes Act, together with applicable California law, bar the plaintiff from maintaining the instant action, notwithstanding the fact that plaintiff subsequently, albeit very belatedly, obtained a certificate of revivor. The contracting officer's final decision denying CPI's claim on the subject contract was issued on October 29, 1985. CPI had twelve months from that date in which to file a timely complaint. However, CPI was suspended pursuant to California Revenue and Taxation Code Section 23301, and, therefore, did not have the capacity to bring a law suit at the time it filed the complaint in the instant action.

### Defendant has not Waived the Statute of Limitations Defense

The plaintiff in this case asserts that the defendant has waived the statute of limitations defense. Plaintiff seeks to preclude the defendant from raising the statute of limitations defense on the basis that the government has waited too long to raise the defense and cannot do so in the eleventh hour, just on the eve of trial. To be sure, this is not an ideal manner in which to proceed. Nonetheless, a statute of limitations defense is a defense which the court cannot ignore.

The Supreme Court consistently has held that waiver of sovereign immunity by the United States must be strictly construed. In *Soriano*, the United States Supreme Court cautioned that "this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." 352 U.S. at 276, 77 S.Ct. at 273.

A further analysis of relevant case law confirms that the statute of limitations is considered jurisdictional in suits against the United States, and cannot be waived. In *United States v. One (1) 1979 Cadillac Coupe De Ville*, 833 F.2d 994 (Fed.Cir.

1987), the court stated that "[a] waiver of sovereign immunity, however, must be clear and explicit and cannot be created by implication or inference." *Id.* at 998; *accord Ben–Shalom v. Secretary of Army*, 807 F.2d 982, 987 (Fed.Cir.1986). The United ed States Court of Appeals for the Federal Circuit has written that "[s]tatutes fixing limitations on suits for money damages against the United States are jurisdictional because they are preconditions on the consent of the United States to be sued, which must be strictly construed." *Ballam v. United States*, 806 F.2d 1017, 1022 (Fed. Cir.1986), *overruled by Owen v. United States*, 851 F.2d 1404 (Fed.Cir.1988) (on a Fifth Amendment takings issue).

Likewise, decisions in the United States Claims Court, following precedent from the United States Supreme Court and United States Court of Appeals for the Federal Circuit, have consistently held that the statute of limitations included in statutes granting limited waivers of sovereign immunity must be strictly construed, and cannot be waived. *Rogers v. United States*, 15 Cl.Ct. 692, 697 (1988); *Structural Finishing, Inc. v. United States*, 14 Cl.Ct. 447, 450 (1988); *Shaver Partnership v. United States*, 11 Cl.Ct. 594, 595 (1987). The courts have consistently applied the strict construction doctrine by holding that claims not filed within twelve months of the receipt of a final decision by a contracting officer are untimely, pursuant to the Contract Disputes Act, 41 U.S.C. § 609(a)(3). *AAAA Enterprises, Inc. v. United States*, 10 Cl.Ct. 191, 194 (1986).

In support of its argument, plaintiff cites to *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.*, 122 Cal.App.3d 834, 176 Cal.Rptr. 239 (1981), an accounting malpractice case involving a state statute of limitations, which is applicable only in professional negligence actions. In that case, the court held that the filing of the appellants' cross-complaint tolled the statute of limitations as to plaintiff's claims, and that upon its revival, it was proper for the plaintiff corporation to proceed with its action. The present case is clearly distinguishable since the case at bar involves a

case against the United States pursuant to the Contract Disputes Act, a federal statute which provides a limited waiver of sovereign immunity, unlike the situation in *Electronic Equipment Express*, which involved an action for accounting malpractice between private parties, under state law.

■ Plaintiff also has attempted to rely on an equitable concept of fairness to argue that it is too late for the government to raise the capacity to sue or statute of limitations defenses. Plaintiff cites to *Thoen v. United States*, 765 F.2d 1110 (Fed.Cir. 1985), as support. In that case, the Court of Appeals for the Federal Circuit reversed a decision in which the United States Claims Court had converted a motion to dismiss to a motion for summary judgment, without providing notice to the plaintiff of its intention to do so. However, once again, the case at bar is clearly distinguishable because this court has gone out of its way to provide the plaintiff an opportunity to respond both orally and in writing to the defendant's Motion to Dismiss, and the plaintiff, indeed, has availed itself of that opportunity. Moreover, the equitable tolling doctrine is not applicable to the statute of limitations set forth in a federal statute which grants a limited waiver of sovereign immunity. As stated in *Jones v. United States*, 9 Cl.Ct. 292, 295, *aff'd*, 801 F.2d 1334 (Fed.Cir.1985), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987), "the statute of limitations is jurisdictional and the court cannot waive it on grounds of policy or equity."

This case does not present an example of mistake or innocent error. Even if relief in equity were available to this plaintiff, which it is not, it should not be invoked on behalf of this plaintiff. On October 16, 1986, at the time that the plaintiff filed this lawsuit in the corporate name, the plaintiff, its president, and its counsel must have known that the corporation had legally ceased to exist. Moreover, the plaintiff here waited for more than fifteen years to revive the corporation. Consequently, for fifteen years, it appears that someone has been knowingly conducting business and

filing lawsuits in the name of a suspended entity.

This plaintiff should not be allowed to have it both ways. The contract was entered into in the name of the corporation. The lawsuit was filed in the name of the corporation. In addition, during these proceedings, the Syeds indicated that they are not parties to the present legal action when, during discovery, in response to a request for the production of documents, the plaintiff corporation's president, Mr. Syed, and his wife, Mrs. Syed, found it convenient to respond by saying that "Mr. and Mrs. Syed, who are not parties to this action, claim a privacy privilege as to their tax returns." The courts should not encourage such behavior and certainly should not invoke its equitable powers on behalf of such a plaintiff.

### Only the Corporate Contractor Has Standing to Bring a Claim Against the United States

■ Rule 17(a) of the Rules of the United States Claims Court specifically states: "Every action shall be prosecuted in the name of the real party in interest." This court has strictly construed the necessity for a case against the United States to be brought by the real party in interest. *See Robo Wash, Inc.*, 223 Ct.Cl. 693, 695 (1980); *S.R. Weinstock & Associates, Inc.*, 223 Ct. Cl. 677, 680, 650 F.2d 286 (1980); *Algonac Manufacturing Co. v. United States*, 192 Ct.Cl. 649, 662, 428 F.2d 1241, 1249 (1970). In the instant case, the plaintiff corporation, CPI, as opposed to any corporate shareholder or employee, entered into the contract with the government. The president or sole shareholder of a corporation, although he may have signed contractual documents on behalf of the corporation, does not have standing to sue on a contract entered into between the corporate contractor and the United States.

In *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 662, 428 F.2d 1241, 1249 (1970), the court held that a corporate officer, who was the sole shareholder of a corporation, did not have standing to sue under contracts entered into by the corpo-

rate contractor and the government. The court stated:

The contracts which serve as the basis for the claims in this case were between the government and Algonac Manufacturing Company. John A. Maxwell [the corporate officer and sole shareholder] was not a party to the contracts. Therefore, on all claims which involve the contracts, we hold that Maxwell is not a proper party to the suit, and we do not have jurisdiction of his petition.

*Id.*

In *Robo Wash, Inc. v. United States*, 223 Ct.Cl. 693 (1980), the court considered a suit brought by the Robo Wash corporation, stockholders and employees of Robo Wash. The claim was based on an alleged agreement between an employee of the Small Business Administration (SBA) and a business that was guaranteed by the corporate plaintiff, Robo Wash, Inc. The court held that the corporate plaintiff was the only real party in interest, and dismissed claims of Robo Wash's employees and stockholders. The court stated:

It is clear from the facts alleged in the petition, that only the plaintiff corporation has an arguable claim of privity with the Government. Any duty SBA may have had under the alleged agreement ran only to Robo Wash. Neither the stockholders nor the two employees were parties to the agreement which was allegedly breached. The guarantee of the SBA loan was made in Robo Wash's name, and Goppert loaned money to the corporation, not the other plaintiffs. It is therefore clear that neither the stockholders nor the employees were in privity with the Government.

*Id.* at 696.

In the present case, the United States entered into a contract with CPI, a California corporation, as opposed to a contract with Mr. Syed, the president of CPI. The plaintiff, CPI, represented itself as a corporation organized under California state law throughout the contract negotiations, the performance of the contract and when it filed the complaint and amended complaint in the United States Claims Court. There-

fore, because the only parties to the contract at issue were the United States and CPI, Mr. Syed cannot be substituted as plaintiff in this case.

## CONCLUSION

The court has thoroughly analyzed the facts and applicable statutory and case law relevant to the above-captioned case. Based on this review, the court holds that CPI does not have the capacity to bring this case because the corporate powers of CPI had been suspended when it filed the lawsuit. Moreover, during the corporate suspension, the applicable statute of limitations, as set forth in the Contracts Disputes Act, 41 U.S.C. § 609(a)(3), had run, and the corporate certificate of revivor submitted by CPI after initiation of the lawsuit, did nothing to affect or toll the statute of limitations. Therefore, for the reasons discussed above, this court's earlier ruling from the bench, GRANTING the defendant's Motion to Dismiss pursuant to RUSCC 12(b)(1) is, hereby, REAFFIRMED.

IT IS SO ORDERED.

