The ESTATE OF Brown J. AKIN, Jr.,
Deceased, and Jean C. Akin,
Individually, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 93–393T.

United States Court of Federal Claims.

April 18, 1994.

David K. Hoel, Tulsa, OK, for plaintiffs.

Elizabeth D. DePriest, Washington, DC, with whom was Asst. Atty. Gen. Loretta C. Argrette, for defendant.

*OPINION*

NETTESHEIM, Judge.

This case comes before the court after argument on defendant's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1). The first issue presented is whether plaintiffs have violated the "full payment" rule, thereby depriving the court of jurisdiction to entertain their tax refund suit. Plain-

tiffs argue that they complied with the full payment requirement because, prior to the filing of the complaint in this case, they entered into a settlement agreement with the IRS that purportedly negated any outstanding tax liability for the taxable year at issue. The second issue posed by defendant's motion concerns whether 26 U.S.C. § 6512(a) (1988), entitled "Limitations in case of petition to Tax Court," precludes the court from exercising jurisdiction as to the first three counts in plaintiffs' complaint for refund. In the alternative, defendant urges dismissal on the grounds that plaintiffs' refund suit, excluding the carrybacks set forth in Count Four of the complaint, is barred by the doctrine of *res judicata*.[1]

FACTS

The following facts are undisputed, unless otherwise noted. On or before October 15, 1984, Jean C. Akin and Brown J. Akin, Jr., paid $115,902.00 in federal taxes for the tax year ending December 31, 1983. Mr. Akin died on August 12, 1990. Plaintiffs are the estate of Mr. Akin and Mrs. Akin. After examination of the Akins' tax return, the Commissioner of the Internal Revenue Service (the "IRS") issued a statutory notice of deficiency on July 22, 1988. Two months later the Akins filed a petition in the United States Tax Court disputing the alleged tax deficiency.

Prior to trial the Akins entered into settlement negotiations with Charles R. Schaller, an Appeals Officer for the IRS' Southwest Region. According to plaintiffs, the parties agreed that the Akins would stipulate to a deficiency for the 1983 taxable year and file an amended tax return, including net operating loss deduction carryforwards from the taxable years 1981 and 1982, and certain net operating loss deduction carrybacks. Plaintiffs maintain that this agreement negated any outstanding tax liability for the taxable

---

1. This argument should properly be considered as a motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. *See Gustafson v. United States*, 27 Fed.Cl. 451 (1993) (noting defendant's claim of *res judicata* properly considered as mo-

tion to dismiss pursuant to RCFC 12(b)(4)); 5A Wright & Miller, *Federal Practice and Procedure*, § 1357 at 357 n. 69 (2d ed. 1990) (citing *Keystone Ins. Co. v. United States*, 332 F.Supp. 74 (E.D.Pa.1971) (dismissing complaint pursuant to Fed.R.Civ.P. 12(b)(6) based on *res judicata*)).

year at issue and resulted in a refund for the Akins.

On or before February 9, 1990, in reliance on the alleged settlement agreement, the Akins filed an amended tax return for 1983 on IRS Form 1040X, requesting a refund for the 1983 taxable year in the amount of $172,-640.00. The Akins based their refund request on net operating loss carryforwards from 1981 and 1982; net operating loss carrybacks from 1984, 1985, 1987, and 1988; and a claim for a partnership loss deduction.[2] To support the carryforwards and carrybacks, the Akins attached various documents to the Form 1040X. One attachment prepared by the Akins concerning the net operating loss carryforward from 1982 stated that although the "[d]eduction [for the 1982 carryforward was] not allowed by [the] IRS field agent ..., [it was] agreed to by Mr. Charles Schaller of IRS Regional Appeals, Tulsa, Oklahoma, and included ... [on the amended form] at his instruction...."[3]

On February 13, 1990, the Tax Court entered a stipulated decision, whereby the Akins were assessed additional income tax and penalties totaling $89,895.00. After identifying a $69,198.00 mathematical error, the IRS informed the Tax Court that the assessment against the Akins must be vacated and recomputed accordingly. On March 23, 1990, the court vacated its earlier decision, and on April 13, 1990, reissued a stipulated decision, indicating that the Akins owed $149,104.50 in additional income taxes and $9,988.00 in penalties for the substantial un-derstatement of taxes. This decision became final on July 13, 1990. Plaintiffs note that the Tax Court took no action on the Akins' pending refund claim.

Following the Tax Court's decision, the IRS assessed the requisite amounts of tax, interest, and penalties against the Akins' 1983 account. Shortly thereafter, in June and August 1990, the IRS made additional assessments against the Akins, thereby further increasing their tax liability for the taxable year at issue. During this same time interval, the IRS began processing the Akins' claim for refund. In evaluating the claim, the Revenue Agent assigned to the case, Thomas Manning, prepared a Revenue Agent's Report ("RAR"), which took the position that the Akins had no tax liability for 1983 and that plaintiffs should be awarded a refund for the 1983 taxable year. Plaintiffs indicate that "[d]efendant ... allowed [both] a net operating loss deduction for the...." 1981 and 1982 carryforwards, a net operating loss deduction carryback from 1984, and a partnership loss deduction. Plfs' Br. filed Jan. 27, 1994, at 3. Plaintiffs further state that "[d]efendant's agents on their own volition," *id.*, permitted net operating loss deduction carryforwards from 1977, 1978, and 1980; these taxable years were not specified by the Akins in their amended tax return.[4] Plaintiffs contend that the inclusion of such carryforward deductions increased the Akins' claim for refund to $252,443.00.

On or about March 20, 1992, Mr. Schaller conveyed to the Akins several documents,

2. Mr. Schaller declares that following the Tax Court settlement negotiations he informed the Akins' representative, Marvin Morse, C.P.A., that the Akins could file a refund claim as to certain net operating loss carrybacks, assuming the statute of limitations had not tolled. Mr. Schaller, however, maintains that he never mentioned the appropriateness of including any carryforwards in the refund claim. Declaration of Charles R. Schaller dated Feb. 1, 1994, ¶ 2.

3. Mr. Schaller asserts that "[t]he carryforwards were not discussed during the Tax Court case settlement negotiations...." and that he "had no knowledge of the existence of ... the subject NOL carryforwards prior to ... [his] review of ... [plaintiffs'] claim for refund in 1992." Schaller Decl., ¶¶ 2, 7. In contrast, plaintiffs maintain (by argument of counsel only) that Mr.

Schaller discussed the carryforwards in the settlement negotiations preceding the Tax Court stipulated decision, which occurred in 1990, and that the Akins relied on his representations in filing the amended Form 1040X.

4. According to Mr. Schaller, although Revenue Agent Manning proposed to allow carryforwards from 1977 through 1982 as well as a carryback from 1984, he did not allow other net operating loss carrybacks from 1985, 1987, and 1988. The Akins appealed the denial of these deductions and Mr. Schaller became involved in the appeal. Mr. Schaller declares that he "did not review the revenue agent's proposed allowance of the carryforwards from 1977 through 1982.... [and instead] proposed [only] to allow the claimed carrybacks from 1984 and 1985 to the extent possible...." Schaller Decl. ¶ 4.

which provided for partial allowance of their refund claim. Plaintiffs signed the requisite forms [5] and returned the documents to Mr. Schaller. After discovering erroneous computations on the forms executed by the Akins, Mr. Schaller sent them new forms for completion. On June 2, 1992, the Akins returned the forms to Mr. Schaller.

According to plaintiffs, the IRS contacted representatives of the Akins on August 3, 1992, informing them of the IRS' decision to disallow all net operating loss carryforwards pursuant to the doctrine of *res judicata.* On May 10, 1993, Earle D. Wagner, Associate Chief, Appeals Office, sent Mrs. Akin an official notice of disallowance of the claimed refund in the amount of $172,640.00.

Plaintiffs then filed suit in the United States Court of Federal Claims on June 23, 1993, seeking damages in the amount of $246,832.00, plus interest and reasonable attorneys' fees.[6] Defendant maintains that at the time plaintiffs filed their complaint, they owed the IRS $140,881.58 in taxes, $23,385.90 in penalties, and $191,438.67 in accrued interest.[7] Defendant notes that the Certificate of Assessments and Payments [8] reflects such an outstanding balance, as of the date on which the complaint was filed.[9] Defendant further states that on November 4, 1993, the date on which the Certificate of Assessments and Payments was signed, the Certificate showed that plaintiffs owed $53,429.48 in taxes, plus $176,960.40 in penalties and interest for the 1983 taxable year.

---

5. The forms signed by the Akins include: Form 2297 entitled "Waiver of Statutory Notification of Claim Disallowance;" Form 3363 entitled "Acceptance of Proposed Disallowance of Claim for Refund or Credit;" Form 5278 entitled "Statement—Income Tax Changes;" and Form 870 entitled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment."

6. Plaintiffs' complaint includes four separate counts. Count One involves the net operating loss deduction carryforwards from 1981 and 1982. Count Two concerns the disputed partnership loss deduction. Count Three involves the net operating loss deduction carryforwards from 1977, 1978 and 1980. Finally, Count Four concerns the net operating loss deduction carrybacks for the taxable years 1984 and 1985.

## DISCUSSION

### 1. *Motion to dismiss*

 When evaluating a motion to dismiss for subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint should be construed favorably to the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), to the end that the court must accept as true the facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). In *W.R. Cooper General Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988), the court stated: "In cases such as this in which a party has moved to dismiss for lack of jurisdiction, we must consider the facts alleged in the complaint to be correct. If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." (Citing *Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686; additional citations omitted.) However, the burden is on plaintiff to establish jurisdiction. *Reynolds,* 846 F.2d at 748 (citing cases).

 In considering a motion to dismiss pursuant to RCFC 12(b)(1), the court may evaluate affidavits or other relevant evidence submitted by the parties whenever the truth of a jurisdictional fact is questioned. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1010–11 n. 4, 91 L.Ed. 1209 (1947). The case law governing affidavits submitted on a motion for summary judgment becomes pertinent. *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991) (citing *Reynolds,* 846

---

7. The IRS abated a portion of plaintiffs' tax liability on July 12, 1993, and August 23, 1993, by allowing certain net operating loss carrybacks for 1984 and 1985 in the amount of $87,452.10. At that time the IRS also reduced plaintiffs' interest assessments by $37,864.17.

8. The IRS issued this Certificate on November 4, 1993, to reflect plaintiffs' tax assessments and credits for the period from October 17, 1984, through August 23, 1993.

9. Plaintiffs dispute this characterization, claiming that the Certificate of Assessments and Payments does not indicate a balance of $140,-881.58, as of the date on which the complaint was filed.

F.2d at 747). Counsel's assertions regarding the fact at issue "cannot substitute for factual statements under oath." *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed. Cir.1984); *see also Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984) (holding that a party opposing a motion for summary judgment must establish a conflict by a counter-affidavit or counter-statement of fact); *Levi Strauss*, 742 F.2d at 1404 (stating that mere assertions by counsel that a factual dispute exists are insufficient to avoid summary judgment); *Alde v. United States*, 28 Fed.Cl. 26, 33 (1993) (same).

### 2. The full payment rule

■ The Court of Federal Claims, concurrently with United States district courts, has jurisdiction over suits for the refund of taxes. 28 U.S.C. § 1346(a)(1) (1988), 28 U.S.C.A. § 1491(a)(1) (West Supp.1993). The Supreme Court interpreted the jurisdictional grant of 28 U.S.C. § 1346(a)(1) to be limited to suits where the taxpayer, prior to the date on which a refund suit is commenced in district court, has fully paid all outstanding tax deficiencies for the taxable year at issue. *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). The United States Court of Claims, predecessor to the Court of Federal Claims, extended this rule, holding that the *Flora* full payment rule applies with equal force to refund suits initiated under 28 U.S.C. § 1491(a)(1). *Tonasket v. United States*, 218 Ct.Cl. 709, 712, 590 F.2d 343 (1978) (Table); *see also Shore v. United States*, 9 F.3d 1524, 1526 (Fed.Cir.1993) (applying full payment rule); *Katz v. United States*, 22 Cl.Ct. 714, 715 (1991) (same).

Plaintiffs maintain that they are exempt from the full payment rule because they seek equitable relief, which they contend the Tax Court cannot provide. Plaintiffs cite no au-

thority for this proposition and ignore the recent ruling of the Federal Circuit in *Shore* that the "prepayment of ... [a] tax deficiency [is] a necessary prerequisite to maintaining a refund action...." in the Court of Federal Claims. *Shore*, 9 F.3d at 1526. The formulation set forth in *Shore* does not contemplate an exception to the full payment rule, as advanced by plaintiffs. The only established exceptions to the full payment rule include assessments covering "divisible taxes such as excise and employment taxes." *Rocovich*, 933 F.2d at 995 (citing *Rodewald v. United States*, 231 Ct.Cl. 962, 963, 1982 WL 20105 (1982)). Plaintiffs, however, do not contend that the taxes at issue fall within the rubric of divisible taxes.

■ Plaintiffs argue alternatively that the full payment rule has been satisfied because on the date that plaintiffs filed the complaint in this case, they, in effect, had "overpaid their 1983 income tax liability." Plfs' Br. filed Jan. 27, 1994, at 5. Plaintiffs do not contend that they paid any additional money following the entry of the Tax Court's stipulated decision. Instead, they argue that such deficiency was paid as of the date of the filing of the complaint in the Court of Federal Claims because of an alleged settlement agreement with the IRS, which had the effect of negating any outstanding tax liability for the taxable year at issue. According to plaintiffs, prior to the filing of this suit, the "[d]efendant ... allowed ... [both] net operating loss deduction[s]" from 1981 and 1982 carryforwards as well as other carryforwards and a partnership loss deduction, which resulted in a refund for the 1983 taxable year. Plfs' Br. filed Jan. 27, 1994, at 3. Plaintiffs do not specify to whom the term "defendant" refers.[10]

Plaintiffs contend that this alleged settlement agreement is memorialized by various forms that the Akins signed at the request of Mr. Schaller, the Appeals Officer, who, plain-

---

**10.** Plaintiffs assert that Mr. Schaller had knowledge of the carryforwards from 1981 and 1982, which, in part, accounted for plaintiffs' refund claim. Because all inferences are required to be drawn in favor of the pleader on a motion to dismiss, the court assumes, for the sake of argument, that Mr. Schaller was aware of and involved with the settlement negotiations concerning the disputed carryforwards from 1981 and 1982. (Mr. Schaller's declaration, however, indicates that he possessed no knowledge of such carryforwards until he reviewed the Akins' claim in 1992.)

tiffs insist, settled their refund claim.[11] Plaintiffs concede that they have produced no documentation of the settlement agreement other than these forms upon which they purportedly relied. Plaintiffs further state that "there were oral representations and agreements made by the Defendant to the Plaintiffs, ... which amount to the minimum requirements of an agreement between the parties to ... [the] case." Plfs' Br. filed Feb. 22, 1994, at 3.

Defendant rejoins that plaintiffs have not satisfied the jurisdictional prerequisite of the full payment rule because Mr. Schaller does not possess the requisite authority to bind the Government in settlement proceedings. Defendant further argues that absent a binding settlement agreement concerning the refund at issue, plaintiffs failed to satisfy the full payment rule because the Akins owed the IRS approximately $140,881.58, excluding penalties and interest, as of the date on which the complaint was filed.

The factual issue that can be resolved on defendant's motion is whether Mr. Schaller was not authorized to bind the IRS in a settlement agreement with the Akins. Although the Commissioner has delegated settlement authority, this delegation is limited to "the Regional Commissioner [of each region], Regional Director of Appeals, Chiefs and Associate Chiefs of Appeals Offices, and Appeals Team Chiefs [in certain cases]." Deleg. Order No. 66 (Rev. 10), 1980–1 C.B. 571; 26 C.F.R. § 601.106(a)(1)(i), (ii) (1993); accord Estate of Jones v. Commissioner, 795 F.2d 566 (6th Cir.1986) (finding settlement negotiated by Appeals Officer invalid); Gardner v. Commissioner, 75 T.C. 475, 1980 WL 4481 (1980) (same); Michael I. Saltzman, IRS Practice and Procedure, § 9.06 (2d ed. 1991) (stating that "[a]ppeals officers do not have final authority to settle tax cases....").

The Tax Court addressed the authority of an appeals officer with respect to settlement negotiations in Gardner. The appeals officer in that case sent a stipulated decision to the taxpayers, but did not submit a settlement proposal to his immediate superior, the Associate Chief of Appeals. The appeals officer later withdrew the settlement agreement,

and the taxpayers filed suit to enforce the terms of that agreement. The Tax Court held that "[w]hile we can sympathize with petitioners' consternation at the withdrawal of the settlement agreement, ... the settlement stipulation cannot be enforced because it was never assented to by any IRS official with authority to approve such settlements." Gardner, 75 T.C. at 477–78, 1980 WL 4481; see also Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929) (holding informal settlement by subordinate employees with no settlement or compromise authority not binding on government).

The Tax Court in Gardner further noted that a settlement can become binding on the IRS only if such agreement is approved by a reviewing officer in the Appeals Office or the agreement is at least submitted to such officer for consideration and the "officer ... take[s] affirmative action in either rejecting or approving the proposal...." Gardner, 75 T.C. at 479, 1980 WL 4481 (emphasis added); see Jones, 795 F.2d at 572 (holding no evidence existed that reviewing officer took affirmative action regarding settlement, even though appeals officer sent taxpayer IRS form letter indicating settlement had been approved).

Plaintiffs do not contest that Mr. Schaller serves in the position of an "appeals officer." Plaintiffs, however, seek to elevate Mr. Schaller's position by describing Mr. Schaller as "a seasoned Internal Revenue Service agent," who dealt with the Akins prior to the trial in the Tax Court and after the entry of the stipulated Tax Court decision. Plfs' Br. filed Feb. 22, 1994, at 4. Although this characterization may be apposite, the issue is not the extent of Mr. Schaller's experience, but, rather, whether he qualifies as an individual authorized by the Commissioner to take affirmative action on a settlement proposal. The undisputed facts of record, and the best-gloss version of the facts put forth by plaintiffs, establish that Mr. Schaller does not possess the requisite settlement authority because he is only an appeals officer, like the

---

11. See supra note 5 for the list of IRS Forms signed by the Akins.

officials in *Gardner* and *Jones. See* Deleg. Order No. 66 (Rev. 10), 1980–1 C.B. 571.

Assuming that Mr. Schaller lacks authority to settle, the question becomes whether he submitted the settlement proposal concerning the Akins' tax liability for 1983 to an officer with settlement authority and whether that officer took any "affirmative action" on the issue. Consistent with applicable regulations and judicial precedent, the only individual possessing the authority to make a determination as to the appropriateness of the purported settlement agreement was Mr. Wagner, Associate Chief of Appeals and Mr. Schaller's superior. The record reflects that Mr. Wagner took affirmative action with respect to the Akins' settlement agreement on May 10, 1993, by issuing a notice of claim disallowance for their refund request. This action, not the actions of Mr. Schaller, is binding on the IRS. The record does not evidence any other affirmative action with respect to the settlement at issue taken by any officer with settlement authority.[12]

Plaintiffs maintain that "[a] fair trial of the merits will show that ... Mr. Schaller's superiors and the Technical Support Staff were involved in the settlement procedure." Plfs' Br. filed Feb. 22, 1994, at 9. Plaintiffs, however, fail to indicate the names or positions of any such officials involved in the settlement proceeding, despite sufficient opportunity to address the issue. Plaintiffs even submitted additional briefing, after the submission of defendant's reply brief, which the court has considered. Plaintiffs did not take occasion to produce evidence of participation in the settlement proceedings by IRS officials with delegated settlement authority, other than mere blanket assertions by counsel. This showing is insufficient. *Levi Strauss,* 742 F.2d at 1404.

The court must draw all factual inferences in favor of plaintiffs on defendant's motion to dismiss. *Haber v. United States,* 831 F.2d 1051, 1052 (Fed.Cir.1987), *reh'g denied,* 846 F.2d 1379 (Fed.Cir.1988), *on remand,* 17 Cl.Ct. 496 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990) (Table). In light of this rule, the *Haber* court held that the trial court granted improperly defendant's motion to dismiss where plaintiff had proffered the testimony of his accountant to refute defendant's argument that plaintiff's claims were time barred. Specifically, plaintiff contended that his accountant had various telephone conversations with unidentified IRS officials during which the officials withdrew the first notice of claim disallowance; this action was relevant to defendant's statute of limitations argument. The Claims Court had found the accountant's declaration insufficient to defeat defendant's motion, even drawing all inferences in plaintiff's favor. The rationale underlying the Federal Circuit's decision appears to be that defendant never contradicted the representations made by plaintiff's accountant. In this case defendant does contest, by the declaration of Mr. Schaller, the representations by plaintiffs' counsel that authorized individuals conducted the settlement negotiations as issue. By submitting an additional brief, plaintiffs had ample opportunity to provide the court with relevant evidence, including affidavits, to raise a triable jurisdictional fact, *i.e.,* whether any authorized official took part in the settlement negotiations. Thus, the record does not require further proceedings concerning whether any individual involved in the settlement proceedings possessed the requisite settlement authority.

As previously noted, plaintiffs relied solely on the settlement agreement as proof of satisfaction of the full payment requirement. Without such agreement plaintiffs owed the IRS $140,881.58 in income taxes as of the date on which the complaint was filed.[13] The Certificate of Assessments and Payments ev-

---

12. Although Revenue Agent Manning evaluated the Akins' refund claim and prepared a revenue agent's report, he possessed no authority to bind the Government. *See Sara Lee Corp. v. United States,* 29 Fed.Cl. 330, 336 (1993) (holding that absent final action on a refund claim, RAR does not bind Commissioner); *Diebold Inc. v. United States,* 16 Cl.Ct. 193, 210, *aff'd,* 891 F.2d 1579 (Fed.Cir.1989), *cert. denied,* 498 U.S. 823, 111 S.Ct. 73, 112 L.Ed.2d 47 (1990) (same); *Garity v.*

*United States,* 81–2 U.S.Tax Cas. (CCH) ¶ 9599, at 88,005–006 (E.D.Mich.1980) (stating that "conclusions and reasoning of IRS agents are irrelevant to the validity of the assessment....").

13. Plaintiffs also owed $191,438.67 in accrued interest and $23,385.90 in penalties as of the date the complaint was filed.

idences such liability. Plaintiffs dispute the Certificate, claiming that it constitutes a "self-serving" statement of liability and that the $140,881.58 income tax liability figure cited by defendant appears nowhere on the Certificate.[14]

■ It is well recognized that a Certificate constitutes proof that a tax assessment has been made. *Rocovich*, 933 F.2d at 994 (citing *United States v. Dixon*, 672 F.Supp. 503, 506 (M.D.Ala.1987), *aff'd*, 849 F.2d 1478 (11th Cir.1988) (Table) (holding Certificate to be " 'presumptive proof of a valid assessment' where 'the defendant has produced *no* evidence to counter this presumption' ") (emphasis in original; citations omitted)). Plaintiffs proffer no evidence contradicting the liabilities set forth on the Certificate; therefore, the Certificate constitutes sufficient proof as to plaintiffs' liability as of the date on which the complaint was filed.

■ As the Federal Circuit noted in *Shore*, a taxpayer must prepay the full tax assessed, excluding interest and penalties when the taxpayer does not seek a refund of the penalties or interest. In this case, because the Certificate reflects a deficiency of $140,881.58 in taxes, excluding interest and penalties, as of the date of the complaint,[15] plaintiffs have failed to satisfy the full payment rule. The court therefore lacks jurisdiction.

### 3. *Equitable estoppel*

■ With respect to the full payment rule, plaintiffs urge application of the doctrine of equitable estoppel. Specifically, plaintiffs claim that "[u]nder any concept of fair play and equity, ... the IRS ... should have communicated with the Plaintiffs after the disposal of the Tax Court case [and informed them] that their claim for refund was disallowed....," instead of "continuing [to] process[ ] ... the subject tax returns in exact accordance with the settlement agreement." Plfs' Br. filed Feb. 22, 1994, at 3–4.

Plaintiffs rely on *Botany Worsted*, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379, and *Guggenheim v. United States*, 111 Ct.Cl. 165, 77 F.Supp. 186 (1948), *cert. denied*, 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441 (1949).

*Guggenheim* and *Botany Worsted* involved assertions of equitable estoppel by the Government as defendant, against the taxpayer, as opposed to the situation in the current case wherein plaintiffs assert estoppel against the Government. In *Guggenheim* the court held that the taxpayer was equitably estopped from pursuing a refund suit for certain taxable years where the taxpayer had previously executed an IRS Form 870–TS governing those same taxable years. IRS Form 870–TS in *Guggenheim* resembles the current IRS Form 870–AD, in that the form provided that "the case shall not be reopened nor shall any claim for refund be filed ... respecting the taxes for the years ... stated...." *Guggenheim*, 111 Ct.Cl. at 180–81, 77 F.Supp. at 195. In this case the IRS did not execute a Form 870–AD. Although the record reflects that the Akins signed a Form 870, this form pertained only to a $9,988.00 penalty assessment, and not to the disputed net operating loss carryforwards and partnership deduction.

In *Botany Worsted* the court held that the taxpayer was not estopped from bringing a refund suit, because the settlement agreement at issue was an informal, oral agreement made by subordinate IRS officials and therefore did not bind the Government or the taxpayer. Application of this rule to cases wherein the taxpayers assert equitable estoppel, as opposed to defendant, indicates that the Government is similarly not estopped by the actions of an unauthorized IRS Appeals Officer who purportedly "settled" the case.

Plaintiffs cannot ignore that courts have consistently applied the doctrine of equitable estoppel against the Government " 'with the utmost caution and restraint.' " *Boulez v. Commissioner*, 76 T.C. 209, 215, 1981 WL

---

14. Although the figure $140,881.58 does not appear on the face of the Certificate, it can be readily derived by performing simple arithmetic, *i.e.*, it represents the deficiency, excluding interest and penalties.

15. Moreover, defendant maintains that even after the abatements of tax which occurred in July and August 1993, following the filing of plaintiff's complaint, plaintiffs still owed the IRS $53,-429.48 in taxes, excluding interest and penalties.

11356 (1981), aff'd, 810 F.2d 209 (D.C.Cir.), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987) (citing *Estate of Emerson v. Commissioner*, 67 T.C. 612, 617, 1977 WL 3636 (1977)); *see Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (holding that "equitable estoppel will not lie against the Government as it lies against private litigants...."). Moreover, "in a civil tax case ... the United States cannot be estopped by any statements made by an individual IRS employee, even where the taxpayer may have relied on those statements to his detriment." *Coleman v. United States*, 82–1 U.S. Tax Cas. (CCH) ¶ 9133, at 83,111 (E.D.Ky.1981), rev'd on other grounds, 704 F.2d 326 (6th Cir.1983) (citation omitted); *see Richmond*, 496 U.S. at 426, 110 S.Ct. at 2472 (affirming "a ... strict approach to estoppel claims involving public funds"); *Garity v. United States*, 81–2 U.S. Tax Cas. (CCH) ¶ 9599, at 88,005–006 (E.D.Mich.1980) (stating that "conclusions and reasoning of IRS agents are irrelevant to the validity of the assessment...."). Finally, those individuals who deal with the Government are charged with knowledge of the applicable regulations and statutes, including those which pertain to the scope of authority of a government agent.[16] *Bornstein v. United States*, 170 Ct.Cl. 576, 582, 345 F.2d 558, 562 (1965) (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947)); *see United States v. Willis*, 164 F.2d 453, 455 (4th Cir.1947) (stating that anyone who deals with an agent of the Government "cannot rely upon the scope of dealing or

apparent authority as in the case of a private agent").

Even assuming that the Akins relied to their detriment on Mr. Schaller's oral representations, the representations were made by an individual lacking authority to bind the Government. *See* Deleg. Order No. 66 (Rev. 10), 1980–1 C.B. 571 (stating that settlement authority rests only in the Regional Director of Appeals, the Chiefs and Associate Chiefs of Appeals Offices, and in certain cases, the Appeals Team Chiefs). In addition, the Akins ultimately were responsible for ascertaining whether the individual with whom they dealt, Mr. Schaller, remained within the bounds of his prescribed authority. The IRS properly published the Delegation Order, which identified the individuals possessing proper settlement authority, in the *Cumulative Bulletin*, a publication available to the public. This Order remains in effect today and plaintiffs do not dispute the existence of such Order. The weight of judicial authority and the undisputed limitations on Mr. Schaller's authority dictate that plaintiffs' claim of equitable estoppel must fail.

4. *The statutory bar to jurisdiction, 26 U.S.C. § 6512(a)(1)*

 Defendant also correctly contends that 26 U.S.C. § 6512(a)(1) (1988), precludes this court from exercising jurisdiction over the first three counts of plaintiffs' complaint because such claims pertain to a taxable year previously litigated by the Akins in the United States Tax Court.[17] *See Erickson v. United States*, 159 Ct.Cl. 202, 216, 309 F.2d 760, 767–68 (1962) (noting that once the Tax Court's jurisdiction attaches, jurisdiction "ex-

---

**16.** The Supreme Court clarified this rule in *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947):

Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation.... Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents.

(Citation omitted).

**17.** 26 U.S.C. § 6512(a) provides, in pertinent part:

Effect of petition to Tax Court
If the Secretary has mailed to the taxpayer a notice of deficiency under section 6212(a) ... and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), ... no credit or refund of income tax for the same taxable year ... in respect of which the Secretary has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court except [in four specified circumstances]....

tends to the entire subject of the correct tax for the particular year"); *Solitron Devices, Inc. v. United States,* 16 Cl.Ct. 561 (1989) (stating that section 6512(a) "prevents a taxpayer from instituting any action in 'any court' after litigating that [specific taxable] year in Tax Court"). Three criteria trigger the bar to jurisdiction under § 6512(a)(1). First, the IRS must issue a notice of deficiency to the taxpayer. Second, the taxpayer must file a petition concerning the deficiency with the Tax Court. Finally, the exceptions provided in section 6512(a) must be inapplicable to the taxpayer's refund claim.

These criteria are present. The IRS issued a notice of deficiency on July 22, 1988, for the 1983 taxable year, and two months later the Akins petitioned the Tax Court to protest the assessment. The Tax Court entered a stipulated decision for the 1983 taxable year on April 13, 1990, which became final on July 13, 1990. In addition, plaintiffs do not contend that they fall within any of the four specified exceptions enumerated in section 6512(a). Thus, by filing a refund suit in the Court of Federal Claims for the 1983 taxable year, plaintiffs ignored the jurisdictional bar of section 6512(a), which was automatically invoked when the Akins filed a petition in the Tax Court concerning the 1983 deficiency notice.

Although plaintiffs never directly address the issue of section 6512(a), they appear to contest defendant's argument by relying on principles of equitable estoppel. The express wording of the statute, however, does not afford the court the opportunity to weigh the equities of the situation. *Gustafson v. United States,* 27 Fed.Cl. 451 (1993) (holding that section "6512(a) does not permit this court to base its decision on equitable considerations"). The court cannot ignore express statutory language and treat plaintiffs as if they had never filed a complaint in the Tax Court. *Id.* at 454–55 (citing *Elbert v. Johnson,* 164 F.2d 421, 424 (2d Cir.1947) (noting that "'it is not the decision which the Tax Court makes but the fact that the taxpayer resorted to that court which ends his oppor-

tunity to litigate in [another court] his taxability for the year in question'") (footnote omitted)). Because plaintiffs seek to recover a refund of taxes paid for the 1983 taxable year, the taxable year at issue in the 1988 Tax Court stipulated decision, the court cannot entertain the first three counts specified in plaintiffs' complaint. The court also may not exercise jurisdiction over Count Four of the complaint because, as previously established, plaintiffs have not satisfied the full payment rule, a jurisdictional prerequisite in the court.[18]

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss for lack of jurisdiction is granted. The Clerk of the Court shall enter judgment dismissing the complaint without prejudice.

IT IS SO ORDERED.

No costs.

---

18. Defendant also argues that plaintiffs' refund suit, excluding Count Four of the complaint, is barred by the doctrine of *res judicata.* In view of the ruling on defendant's motion, it is unnecessary to address this argument.