10

**Hussam T. HAMZA, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

No. 95–822 C.

United States Court of Federal Claims.

June 19, 1996.

Joseph F. Runey, Charleston, South Carolina, for plaintiff.

John P. Sholar, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunter, Director David M. Cohen, and Deputy Director Sharon Y. Eubanks, for defendant. Vivian Davis, U.S. Army Corps of Engineers, Savannah, Georgia, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This contract dispute is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). The court must decide whether a contracting officer's final decision received by plaintiff's attorney begins the running of the statute of limitations under the Contract Disputes Act of 1978 (the "CDA"), 41 U.S.C. § 609(a)(3) (1994). For the reasons set forth below, defendant's motion is granted, as the statute of limitations prevents the court from exercising its jurisdiction.

## FACTS

Plaintiff, Hussam T. Hamza, a resident and citizen of the Kingdom of Saudi Arabia, owns real property and buildings, collectively known as the Hamza Compound, located in the Kingdom of Saudi Arabia. On October 8, 1990, plaintiff leased the Hamza Compound to the United States Government for an annual rental rate of $1,750,000. The Dhahran Area Office ("DAO") of the United States Army Corps of Engineers executed the lease for a one year term, from September 30, 1990 to September 29, 1991, in support of Operation Desert Storm.

The lease contained several provisions, including an option to renew for an additional year "provided that notice be given in writing to the LESSOR by the LESSEE not less than sixty (60) days before this lease would otherwise expire." (Def.'s App. at 6.) The lease also required plaintiff to notify defendant at least thirty days prior to the expiration of the lease if defendant was responsible

for restoration of the premises. Restoration involved returning the premises in "as good of a condition as that existing at the time of entering" upon the premises, less reasonable and ordinary wear and tear. (Def.'s App. at 7.) Under this provision defendant had the option of either making a monetary settlement with plaintiff or performing the restoration.

The lease further granted defendant the right to transfer and assign the lease. On December 12, 1990 the United States notified plaintiff of its intent to exercise this right, and on March 20, 1991 defendant executed an Assignment and Transfer Agreement with the Kingdom of Saudi Arabia. Under the agreement, the Saudi Arabian Government agreed to perform the duties in the lease, including payment of all rents due. A copy of this agreement was subsequently mailed to plaintiff, and defendant apparently vacated the property on June 19, 1991 after plaintiff conducted a final inspection of the premise.

By August 1991, the United States had not exercised the option to renew. Nevertheless, plaintiff informed DAO in a letter dated August 3, 1991 that defendant's failure to notify constituted automatic renewal of the lease for an additional year. Plaintiff then requested the rental payment for the second year. In contrast, DAO argued that its silence indicated defendant's intent to allow expiration of the option. DAO further requested that plaintiff submit an itemized list of damages to the premises and the estimated cost to restore the property to its condition prior to the execution of the lease. Plaintiff did so on August 8, 1991, without mentioning a claim for additional rent.

On December 10, 1991 the United States entered into a supplemental agreement with plaintiff wherein defendant agreed to pay plaintiff for damages totalling $13,333.34 in lieu of defendant's restoration obligation. The language of the supplemental agreement stated that the United States vacated the premises on June 19, 1991, but that the lease was terminated as of the effective date of the agreement, December 10, 1991, thereby releasing defendant from further liability. However, in a letter dated March 11, 1992, plaintiff sought rental payment from defendant for the period of October 1, 1991 through December 10, 1991—the seventy days between the expiration of the lease and the execution of the supplemental agreement.

Defendant responded to plaintiff stating that the supplemental agreement served to identify the damages defendant owed to plaintiff, which were paid, and to unconditionally release both the United States and the Kingdom of Saudi Arabia from any other claims arising from the lease. Defendant explained that since plaintiff had waived his rights to make further claims under the lease, the United States was under no obligation to pay additional rent. Moreover, as a result of the Assignment and Transfer Agreement, the Saudi Arabian Government was the party responsible for the lease.

In a letter dated April 7, 1992, plaintiff maintained that the termination date of the lease was December 10, 1991 and that the United States had possession of the property until that date. Plaintiff denied the existence of a contractual agreement between himself and the Kingdom of Saudi Arabia and instead asserted that the United States was responsible for the rent due. The Saudi Arabian Government apparently also insisted plaintiff's claim was defendant's responsibility. As a result, plaintiff informed defendant of his intent to file a lawsuit requesting rent for an entire year, not just the seventy day period, if the United States persisted in denying the rent payment. When defendant continued to maintain that the supplemental agreement released it from further claims, plaintiff filed an action against defendant in the United States District Court of South Carolina seeking one year's rent, prejudgment interest, attorney's fees and costs.

By order dated June 25, 1993, the United States District Court of South Carolina transferred plaintiff's case to this court, pursuant to 28 U.S.C. § 1631 (1994), to cure a lack of jurisdiction. Four months later, plaintiff filed a complaint in this court seeking one year's rent. On May 13, 1994, plaintiff's claim was dismissed for plaintiff's failure to properly certify his claim to the contracting officer which deprived the court of subject matter jurisdiction. *Hamza v. United States*, 31 Fed.Cl. 315, 324 (1994).

On June 16, 1994, plaintiff resubmitted a properly certified claim to the contracting officer seeking $335,616 for additional rent from October 1, 1991 through December 10, 1991. On November 15, 1994, the contracting officer issued and mailed his final decision denying the claim to plaintiff's American attorney by certified mail, return receipt requested, *and* to plaintiff in Saudi Arabia by express mail. (Def.'s App. at 43–50.) Plaintiff's attorney received the contracting officer's final decision on November 18, 1994. (Def.'s App. at 50.) However, plaintiff, through his American attorney, waited until December 13, 1995 to file his complaint in this court, seeking one year's rent, $1,750,-000, instead of the seventy day period denied by the contracting officer.

On March 13, 1996, the United States filed a motion to dismiss for lack of subject matter jurisdiction on the ground that plaintiff's claim is time barred by the twelve month statute of limitations contained in the CDA, 41 U.S.C. § 609(a)(3). Defendant argues that the statute of limitations began to run on November 18, 1994 when plaintiff's attorney received notice of the contracting officer's final decision, and thus plaintiff missed the deadline for filing his claim by almost one month. In response, plaintiff argues that: (1) due to language barriers he did not authorize his American attorney to accept notice on his behalf; thus, the statute of limitations did not begin to run until late December, when plaintiff claims he received the contracting officer's final decision; and (2) the United States should be estopped from asserting any statute of limitations defense due to alleged misrepresentations about settlement made to plaintiff by defendant's representatives in Saudi Arabia.

### DISCUSSION

■ When ruling on a motion to dismiss for lack of subject matter jurisdiction the court must generally assume unchallenged facts are true. *See Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). However,

when disputed facts relevant to the issue of jurisdiction exist, the court may decide those questions of fact. *Id.; Hedman v. United States,* 15 Cl.Ct. 304, 306 (1988), *aff'd,* 915 F.2d 1552 (Fed.Cir.1990). Although the court must generally assume unchallenged facts are true when deciding whether requisite subject matter jurisdiction exists, the court is not required to accept plaintiff's framing of the complaint. *See Cedars–Sinai Medical Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994). Instead, the court may consider materials and evidence extrinsic to the pleadings when jurisdiction is at issue. *Id.* at 1584; *Estate of Akin v. United States,* 31 Fed.Cl. 89, 92 (citing *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947)), *aff'd,* 43 F.3d 1487 (Fed.Cir.1994). The non-moving party bears the burden of establishing the court's jurisdiction by a preponderance of the evidence when subject matter jurisdiction is questioned. *Reynolds,* 846 F.2d at 748; *see also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

■ This court's jurisdiction is defined by the Tucker Act. 28 U.S.C. § 1491 (1994). The Tucker Act alone, however, does not create a substantive right to recover money, but instead waives sovereign immunity under specific conditions. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980). In order for this court to exercise jurisdiction over plaintiff's claim, the claim must be predicated on a constitutional provision, congressional statute, executive department regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1); *Nussinow v. United States,* 23 Cl.Ct. 556, 559 (1991). In the instant case, plaintiff asserted jurisdiction under the CDA, which applies to "any express or implied contract ... entered into by an executive agency...." 41 U.S.C. § 602(a)(1) (1994).

■ As sovereign, the United States is "immune from suit save it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Statutes of limitations, such as con-

14

tained in the CDA, are "waiver[s] of sovereign immunity and thus must be strictly construed." *See Bowen v. City of New York,* 476 U.S. 467, 479, 106 S.Ct. 2022, 2029, 90 L.Ed.2d 462 (1986). The CDA provides that any action filed in the United States Court of Federal Claims "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim. . . ." 41 U.S.C. § 609(a)(3). This language means that actual physical receipt of the contracting officer's decision is the critical event that starts the running of the statute of limitations. *Borough of Alpine v. United States,* 923 F.2d 170, 172 (Fed.Cir.1991), *aff'g* 19 Cl.Ct. 802 (1990). Timely filing provides the court with the requisite jurisdiction to allow adjudication of the claim. *Handel v. United States,* 16 Cl.Ct. 70, 73 (1988). Accordingly, the lack of timely filing renders the contracting officer's decision "final and conclusive and not subject to review by any forum. . . ." 41 U.S.C. § 605(b). As stated by this court's predecessor, "Congress has set the twelve-months limit, and this court cannot and should not read into it exceptions and tolling provisions Congress did not contemplate or authorize." *Gregory Lumber Co. v. United States,* 229 Ct.Cl. 762, 763, 1982 WL 25950 (1982).

■ In response to defendant's motion, plaintiff first argues that his complaint was filed within the CDA's twelve month statute of limitations. Plaintiff does not dispute that his attorney, Joseph F. Runey, received the contracting officer's final decision on November 18, 1994 by certified mail. Rather, plaintiff contends that he did not authorize his attorney to accept service on his behalf, and therefore the statute of limitations did not begin to run until plaintiff received the decision, apparently in late December 1994.

■ Plaintiff's first argument is without merit. Ample case law supports that notice to a party's representative is equivalent to notice to the party. *Link v. Wabash R.R.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962); *Gragg v. United States,* 717 F.2d 1343, 1345 (Fed.Cir.1983); *Structural Finishing, Inc. v. United States,* 14 Cl.Ct. 447, 450 (1988). For example, in *Structural Finishing,* this court held that the statute of limitations began to run when the contractor's attorney received notice of the contracting officer's final decision, and not when the contractor received notice from his attorney. *Structural Finishing,* 14 Cl.Ct. at 449–50. In *Borough of Alpine,* the Federal Circuit held that the statute of limitations began to run when the Borough clerk signed the return receipt effectuating receipt of the contracting officer's final decision for the Borough on September 30, 1988 instead of when the Mayor distributed the letter to the Borough Council on November 4, 1988. *Borough of Alpine,* 923 F.2d at 172. The Federal Circuit reasoned that it would "not read 41 U.S.C. § 609(a)(3) to exclude authorized representatives of a corporate contractor from the terms of the statute." *Id.* at 173. Likewise, this court will not read 41 U.S.C. § 609(a)(3) to exclude plaintiff's attorney from the terms of the statute. Thus, the statute of limitations begins to run when plaintiff's representative receives the contracting officer's final decision.

■ Although plaintiff claims that he did not authorize his attorney to accept notice on his behalf, the court would be hard pressed to find that Mr. Runey was not plaintiff's duly authorized representative for the purposes of this dispute. Mr. Runey initially represented plaintiff in various correspondence with defendant concerning the claim beginning in 1992 and then later submitted plaintiff's claim to the contracting officer on June 16, 1994. (Def.'s App. at 13, 17, 23, 27.) Mr. Runey received the contracting officer's final decision on November 18, 1994, (Def.'s App. at 50), and filed this suit on December 13, 1995. These facts clearly indicate that Mr. Runey was plaintiff's representative and, as such, possessed the requisite authority to accept notice on plaintiff's behalf. As a result, the statute of limitations began to run when Mr. Runey received the contracting officer's final decision on November 18, 1994.

■ Even if the court were to ignore the fact that plaintiff's attorney had notice of the denial of plaintiff's claim on November 18, 1994, it would still be difficult for the court to find plaintiff's petition timely. It is

undisputed that the contracting officer also sent his final decision on November 15, 1994 to plaintiff in Saudi Arabia by express mail, next day service. To prove that notice through mail is defective, plaintiff "must overcome a 'well-established presumption that a letter which is properly sealed, stamped, addressed, and deposited in the United States mails is presumed to reach the addressee and be received by him in due course of the mails.'" *Zlotolow v. United States*, 35 Fed.Cl. 133, 136 (1996) (quoting *Charlson Realty Co. v. United States*, 181 Ct.Cl. 262, 274, 384 F.2d 434 (1967)). Evidence of timely mailing is rebuttable; however, positive and direct proof is necessary to prove late arrival. *Charlson Realty Co.*, 181 Ct.Cl. at 284, 384 F.2d 434.

Plaintiff fails to supply any proof of late arrival to overcome this rebuttable presumption. Instead, he merely asserts in vague generalizations that he did not receive the express letter until sometime after December 15, 1994. Between the uncontested receipt of the decision by Mr. Runey on November 18, 1994 and the contracting officer's express mailing of the decision to plaintiff on November 15, 1994, plaintiff had ample time to translate the decision into Arabic and file a timely complaint within the twelve month limit authorized by Congress to waive sovereign immunity. Given that the statute of limitations began to run when plaintiff's attorney received the contracting officer's final decision on November 18, 1994, plaintiff's claim filed December 13, 1995 was untimely.

Plaintiff further contends that the United States should be estopped from asserting the statute of limitations as a defense due to various alleged misrepresentations made to plaintiff by defendant concerning the prospects of settling his claim. The court finds this argument to be without merit. Plaintiff offers no proof to support these allegations and again relies on general statements in his brief in lieu of any concrete evidence of defendant's conduct. Even assuming that such misrepresentations were made, the government is not estopped from applying the statute of limitations as a defense because estoppel cannot be used against the federal government. *Bevelheim-*

*er v. United States*, 4 Cl.Ct. 558, 562 (1984) (citing *Legerlotz v. Rogers*, 266 F.2d 457, 459 n. 5 (D.C.Cir.1959)); *see also Jascourt v. United States*, 207 Ct.Cl. 955, 1975 WL 22989 *cert. denied*, 423 U.S. 1032, 96 S.Ct. 562, 46 L.Ed.2d 405 (1975). "Absent any express and unequivocal statutory basis, this court may not, under long established principles, waive or extend a statutory limitation on the sovereign's immunity to suit." *Dico, Inc., v. United States*, 33 Fed.Cl. 1, 4 n. 3 (1993), *aff'd*, 48 F.3d 1199 (Fed.Cir.1995). Therefore, equitable tolling cannot be used to extend or waive the statute of limitations contained in a federal statute which grants a limited waiver of sovereign immunity. *Computer Prods. Int'l, Inc. v. United States*, 26 Cl.Ct. 518, 528 (1992). With respect to actions filed under the CDA, Congress has limited that waiver by virtue of the twelve month statute of limitations and only Congress can expand the extent to which consent has been given. Since the statute of limitations is a jurisdictional requirement, "the court cannot waive it on grounds of policy or equity." *Id.* Accordingly, this court lacks the power to extend the statute of limitations beyond the twelve month period authorized by Congress.

## CONCLUSION

For the reasons set forth above, this court lacks subject matter jurisdiction over plaintiff's claim. Defendant's motion is granted, and plaintiff's claim is dismissed.

No Costs.

**IT IS SO ORDERED.**